# The Vulcanite Paving Co., *et al.*, to the use of the City of Philadelphia *versus* The Philadelphia Traction Co.

1. A written contract to do certain work, according to plans and specifications which are made a part thereof, for a definite sum—in this case paving at a fixed price per square yard—filed in an action thereon, with averments of the plaintiff specifying that the work has been done

[Vulcanite Paving v. City of Philadelphia.]

according to the contract, the amount of such work, and the sum due the plaintiff therefor, entitles the plaintiff to judgment for want of an affidavit of defence.

2. Where one of the conditions of a contract is, that the decision of the architect shall be final and conclusive on the parties, and he has decided that the work done under the contract, was done according to the terms of the same, an affidavit of defence averring that the work was not so done, without specifying any reason requiring the decision of the architect to be set aside, is not a sufficient affidavit of defence to prevent judgment being entered.

3. An instrument in writing is within the affidavit of defence law, if it be for the payment of money, as contradistinguished from one for the performance of any collateral undertaking, though not exhibiting on its face a *prima facie* right in the plaintiff to recover, if supplemented with such averments of facts as with the instrument itself would warrant a verdict for the plaintiff.

January 26th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ., CLARK, J., absent.

ERROR to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1887, No. 72.

This was an action of covenant brought by The Vulcanite Paving Company of Philadelphia, and The Barber Asphalt Paving Company of Washington, D. C., to the use of the city of Philadelphia against the Philadelphia Traction Company.

The following are the facts of the case as they appeared in the court below:

On October 15th, 1884, the city of Philadelphia by their agents, the commissioners for the erection of the public buildings, made a contract with The Vulcanite Paving Company, of Philadelphia, and The Barber Asphalt Paving Company, of Washington, D. C., by which said paving companies agreed to "grade and pave the whole of the roadways surrounding the new city hall, furnishing all the materials and labor complete, including Broad street from the south line of the curb on Penn square to the north line of the passenger railway track on Chestnut street."

The said pavement was to be of Trinidad asphalt, upon a hydraulic concrete base eight inches in thickness, with gutters eighteen inches in width of Neûchatel asphalt, and the work and materials were to be done and furnished according to certain specifications annexed to the contract.

By the terms of the contract the work to be done and the materials furnished were to be subject to the approval of the architect and the superintendent of the public buildings, and payments made for the said work upon bills certified by the architect and superintendent and the chief commissioner of

highways, as shown by the following paragraph of the contract:

7. All the said work is to be done and materials furnished under this contract to the entire satisfaction and acceptance of the architect and superintendent; and either the said architect or superintendent is to have full and absolute power and authority, from time to time, and at any time, to reject any work done or materials furnished under this contract, which they or either of them may think not properly done or unfit; and the said parties of the second part agree forthwith, at their own cost and expense, to do over again any and all such work, and replace all such materials so rejected; and in case of neglect or refusal by the said parties of the second part to do over again and replace the same respectively, the said architect or superintendent are hereby authorized and empowered, upon or after the third day after notice of any such rejection, to cause the same to be done over again and replaced respectively, and to charge the cost and expenses of and attendant upon such doing over and replacing to the said parties of the second part; and the amount so charged is to be retained and deducted from the payment and payments due said parties of the second part under this contract, next after any and every such doing over again and replacing.

The decision of the architect, as to the character of the work done or materials furnished, as above provided, and his consequent rejection thereof, is, under all circumstances, and in every event, to be final, binding and conclusive on the parties hereto.

For this work the city of Philadelphia agreed to pay The Vulcanite Paving Company and The Barber Asphalt Paving Company at the rate of three dollars and fifty cents per square yard.

The Philadelphia Traction Company, desiring this pavement to be laid around the buildings, agreed to pay the one fifth part of the cost thereof, and accordingly, on the sixteenth day of October, 1884, executed a contract indorsed upon the contract between the city and the paving companies as follows:

The Philadelphia Traction Company assent to the terms and conditions of the within contract, and agree to wholly assume, be responsible for, and pay to the parties of the second part the one fifth part of the cost of grading and paving the whole of the roadways surrounding the new city hall, and the one fifth part of the cost of grading Broad street, from the south line of the curb on Penn square to the north line of the passenger railway track on Chestnut street, as within provided. In witness whereof, they have hereunto, by their president

affixed their corporate seal, attested by their secretary, this sixteenth day of October, A. D. 1884.

The plaintiff filed in the case a copy of the contract and the following averment:

That the total cost of grading and paving the whole of the roadway surrounding the new city hall was 17,877.52 square yards, at $3.50 per square yard, $62,571.32.

That the total cost of grading Broad street, from the south line of the curb on Penn square to the north line of the passenger railway track on Chestnut street, 1244½ cubic yards, at 62 cents per cubic yard, $771.59.

That the defendant, the Philadelphia Traction Company, by its contract, agreed to pay to the Vulcanite Paving Company and the Barber Asphalt Paving Company the one fifth part of the cost of grading and paving the whole of the roadway surrounding the new city hall, and the one fifth part of the cost of grading Broad street, from the south line of the. curb on Penn square to the north line of the passenger railway track on Chestnut street, the said one fifths amounting to twelve thousand six hundred and sixty-eight dollars and fifty-eight cents ($12,668.58), which said sum the Philadelphia Traction Company refused to pay, and the said sum was paid by the city of Philadelphia to the said Vulcanite Paving Company and the Barber Asphalt Paving Company.

That the said work has been entirely completed, in accordance with the said contract and specifications. And the said Vulcanite Paving Company and the Barber Asphalt Paving Company having assigned their claim against the Philadelphia Traction Company to the city of Philadelphia, the said the city of Philadelphia brings suit to recover the said amount, to wit, twelve thousand six hundred and sixty-eight dollars and fifty-eight cents ($12,668.58).

The defendant filed the following affidavit of defence.

That said defendant is advised that said copy is not such an instrument of writing as entitles the plaintiff to have and require of the said defendant an affidavit of defence thereto, but without waiver of this objection on behalf of said defendant this deponent saith,

That it is not true, as in said averment set forth, that said work referred to in said contract has been entirely completed in accordance with the said contract and specifications, but on the contrary, this deponent avers that after said alleged completion of said work defendant had five samples of asphalt taken from said pavement around the city hall. These samples were left with Charles M. Cresson, an expert, to determine if the pavement was laid of the quality and kind required by said contract and specifications.

The said Cresson made a report in writing, of which the following is a copy:

Here follows the report at length concluding as follows:

There is, then, a deficiency of over 66 per cent. in the amount of carbonate of lime required and an excess of over 11 per cent. in the amount of sand allowed, based upon the maximum percentage set out in the specification. It is evident from this statement that the three samples of asphalt surfacing analyzed vary materially in composition from that one which would result from the use of the formula; that is, they are not compounded in the manner specified, and do not constitute an equivalent asphaltic surfacing with that required by the specification.          CHARLES M. CRESSON, M. D.

And deponent saith he believes the facts set forth in the above and foregoing analysis to be true, and that the defendant will be able to prove the same to be true on the trial of this case.

And deponent further saith that the defendant is advised that as said roadway is not substantially conformable to the said contract and specifications, and does not constitute an equivalent, that no liability to pay for the same arises on the covenant entered into by the said defendant.

A rule was entered to show cause why judgment should not be entered for want of a sufficient affidavit of defence.

This rule the court, MITCHELL, J., discharged, filing the following opinion:

In view of the number of separate courts in this county and the consequent difficulties of practitioners, it becomes specially important that settled practice should not be departed from. For that reason, this court has uniformly resisted the efforts to enlarge the operation of averments supplementary to copies of instruments filed, to obtain judgment for want of affidavits of defence.

As said by Chief Justice SHARSWOOD, in Ins. Co. *v.* Brierly (10 Weekly Notes 45), "It doubtless would be very convenient for plaintiffs to obtain judgment by filing averments" in addition to the instrument itself. But it is always to be remembered that the question is not whether the plaintiff has a good cause of action, but whether he has a complete case on the face of the instrument. It was accordingly settled many years ago in Imhoff *v.* Brown (6 Casey, 506), that averments are not permissible to enlarge or complete the plaintiff's claim, and the practical formula established in the late District Court, where nearly all such questions arose, was whether the instrument itself makes so complete a case that a jury can give a verdict upon it alone without other evidence.

This general rule has been repeated in many cases, of which,

however, it is sufficient to refer to only a few. In Lash v. Von Neida (42 Leg. Int. 172, 16 Weekly Notes 93), it was held that averments of payment of interest within twenty years would not make out a case against the presumption of payment, PAXSON, J., saying, "The credits are no part of the bond, and are not evidence of such payments until proved." In Ins. Co. v. Brierly, above quoted, the practical rule of the District Court is cited with approval by the Supreme Court as a settled rule. This ought to be conclusive of the present case. Calhoun v. Monongahela Building Association (8 Out., 392), though upon a somewhat different class of instruments, is a very strong illustration of the limits in the office of an averment, as the rule of court allowed the copy of the instrument to be supplemented by an averment, notwithstanding which the Supreme Court reversed the court below on the application of its own rule.

The instrument sued on in the present case is an agreement to pay for work to be done thereafter. On the face of the paper there is no proof that the work ever was done at all, and this proof cannot be supplied by an averment.

Rule discharged. Exception by plaintiffs to ruling and decision of the court.

The plaintiff thereupon took this writ assigning for error the action of the court in discharging said rule.

*Samuel Peltz*, solicitor of Commissioners for the erection of the Public Buildings, for plaintiff in error.—In stating that the instrument was for the payment of money in future, and, therefore could not require an affidavit of defence, the court evidently took the ground that the instrument was an executory contract, and, therefore, not within the affidavit rule.

This certainly was error, for it has been laid down by Judge THAYER, in a very thorough and exhaustive opinion in the case of Sutton v. Athletic Club, 4 W. N., 90 (which case has been considered a leading one and has been affirmed by the Supreme Court in Matthews v. Sharp, 3 Outerbridge, 560), that just such cases as the present one did come within the affidavit of defence law.

He also cited Dewey v. Depuy, 2 W. & S., 556; Montgomery v. Johnson, 1 Miles, 324; Rile v. Worl, 1 Phila., 45.

The averment sets forth compliance with the contract by the plaintiffs, *i. e.*, the completion of the work and default by the defendants, *i. e.*, the refusal to pay for the work done, and liquidates the sum which the defendants agreed to pay, by setting forth the exact amount of the one fifth of the cost of the work. And that is all that the averment does; it does not attempt to enlarge the plaintiff's claim or to allege any facts against the defendants, outside of the contract sued on. It simply follows

the law laid down in other cases, in which averments, alleging the same matters, have been allowed, and does not in any manner attempt to establish any liability of the defendants, for the liability was fixed by the contract itself, independent of any averment which was or could have been filed in this case: Fertig *v.* Maley, 5 W. N. C., 133; Johnson *et al. v.* Cowan, 9 P. F. S., 275; Bank *v.* Thayer, 2 W. & S., 443; Ourhoff *v.* Brown, 6 Casey, 504; Dickerson *v.* McCausland, 3 W. N. C., 327; Kerns *v.* Life Ins. Co., 86 Pa. St., 171; Journal of Commerce *v.* Reever, 17 W. N. C., 222; Leonhardt & Son *v.* Curtiss, 18 Id., 63.

The only defence which the defendant attempts to make is to a part of the pavement; that is, to the asphalt surfacing. There is nothing in the affidavit of defence, nor in the analysis, which alleges that either the grading on Broad street, south of the curb line on Penn square, or the grading, or the hydraulic concrete base of the roadways around the buildings, was not properly done; in fact there is nothing said in the affidavit about the grading or concrete base, which formed a very large part of the work and material, under the contract for the one fifth of the cost of which defendant promised to pay. And it cannot be inferred that it was not done in accordance with the contract, but, on the contrary, it is to be presumed that it was properly done. Whatever is not said in an affidavit of defence is taken not to exist: Lord *v.* Ocean Bank, 8 H., 381: Gould *v.* Bush, 13 W. N. C., 29; Watson *v.* Galloway, 1 W. N. C., 109.

*David W. Sellers*, for defendant in error.—Submitted no paper-book, but relied upon the opinion of the court below.

Mr. Justice STERRETT delivered the opinion of the court, March 14th, 1887.

Two questions are presented by this record: 1st. Whether the contract, on which suit was brought, is an instrument for the payment of money within the meaning of the affidavit of defence law of March 28th, 1835? 2d. If it is so, does the affidavit of the company defendant disclose any defence that entitles it to a jury trial?

The second section of the Act provides that, "In all actions . . . . . on bills, notes, bonds and other instruments for the payment of money and for the recovery of book debts, in all actions of *scire facias* on judgments and on liens of mechanics and material men, . . . . . it shall be lawful for the plaintiff to enter judgment by default, notwithstanding an appearance by attorney, unless the defendant shall previously have filed an affidavit of defence, stating therein the nature and character

óf the same: provided that, in all such cases, no judgment shall be entered by virtue of this section unless the said plaintiff shall . . . . . have filed, in the office of the prothonotary, a copy of the instrument of writing, book entries, record or claim on which action has been brought." This is the first legislation on the subject, but the practice of requiring affidavits of defence in certain cases originated as early as 1795, and, under rules of court, adopted with various modifications in nearly every judicial district, has become a most important feature of our civil jurisprudence. An interesting account of the origin and progress of the affidavit of defence system in this state is given by Mr. Endlich in his excellent treatise on "The Law of Affidavits of Defence" 1, 2 *et seq.* With comparatively slight modifications in the direction of progress, the practice in the first judicial district, city and county of Philadelphia, has remained in *statu quo* for over half a century. During that period, a vast amount of litigation has arisen, under the Act above quoted, not so much as to what constitutes a sufficient affidavit of defence, as in relation to what are "instruments of writing for the payment of money." Some of the decisions, adopting a very strict construction of the Act, hold that no instrument is within its purview that does not, upon its face, exhibit a *prima facie* case in favor of plaintiff,—an instrument which without facts *dehors* the writing itself would warrant a jury in rendering a verdict in his favor. The logical sequence of this principle would exclude all past due notes except in suits between the payee and maker. It would exclude a negotiable note in suit against an indorser unless a waiver of protest is indorsed thereon by the latter. To avoid this consequence, resort has been had to a "presumption that all steps have been duly taken which are necessary to fix liability, such as due presentment, demand of payment at the proper time and place, and notice of dishonor:" McConegly *v.* Kirk, 68 Pa., 200. But why *presume* rather than *aver* the existence of facts, *dehors* the instrument, essential to plaintiff's right of action? The latter has certainly all the effect of the former, with the superadded advantage of express notice to defendant of what he is required to meet.

In other cases, more in harmony with its remedial purposes, the Act has received a more liberal construction. They hold, in substance, that an instrument, if it be for the payment of money, as contradistinguished from one for the performance of any collateral undertaking, though not exhibiting on its face a *prima facie* right in plaintiff to recover, may be helped out by proper averments of fact, which, coupled with the instrument itself, will warrant a verdict in plaintiff's favor. One of these is Bank *v.* Thayer, 2 W. & S., 443, in which Mr. Justice

'[Vulcanite Paving Co. *v.* City of Philadelphia.]

Rogers, speaking of the provision for entering judgment in default, etc., says: "The instrument of writing has relation to the payment of money, and the paper itself, without extraneous evidence, imports a direct and absolute undertaking to pay. It is true, without the averment or proof of extraneous facts, simple interest could only be recovered; but this cannot alter the case, for otherwise, in certain cases, as suits against indorsers, the holders of bills of exchange and promissory notes would lose the benefit of this provision. In every adjudication on the Act, which is a remedial and a very beneficial one, we have always held that it should be liberally construed. If it be necessary to make averments *dehors* the instrument on which suit is brought, whether it be note, bill or any other instrument for the payment of money, the fact so set forth may be denied in the affidavit. If not denied, it is admitted, and the court can say with certainty whether, taking the statement with the affidavit, the defendant has any defence to the action." Again, in Dewey *v.* Dupuy, Id., 556, Mr. Justice Sergeant, speaking of the instrument sued on, says: "The contract, on its face, shows a liability to pay money, and it is in the power of the defendant to deny all indebtedness upon it, or to explain the nature of the defence against all and any claim that might arise from the face of the instrument. It would seem as if the legislature intended that the propriety of entering a judgment was to be tested, not so much by the plaintiff's claim as by the defendant's affidavit, which is, on that account, required to state specifically the nature and character of the defence." In Sutton *v.* Athletic Club, 4 W. N. C., the learned president of Common Pleas, No. 4, of Philadelphia, in a well considered opinion, held in substance that every written agreement, by which a man binds himself to the payment of a certain sum of money, is within the Act, if, when suit is brought, the time of payment is elapsed, and the defendant will be put to his affidavit of defence, although the payment of the money was, when the contract was made, dependent on the future performance of acts by the plaintiff. In same case he also remarks: "It has been sometimes said, perhaps without sufficient consideration of the progress of the law, that executory agreements are not within the affidavit of defence law, but an examination of the cases will show that such a proposition is altogether untenable: " and cases are there cited in support of his position.

In Matthews *v.* Sharp, 99 Pa., 560, the point was made that the agreement in suit was executory and, therefore, not within the affidavit of defence law, and could not be helped out by plaintiff's averment that " he was ready and offered to perform his covenants in the said agreement," etc. But the position was treated by this court as untenable, and the judgment in

favor of plaintiff was affirmed. That case arose under rule of the Common Pleas of Chester county adopting the affidavit of defence Act under consideration. Other cases might be cited in support of the more liberal and, as we think, proper construction of the Act, but it is unnecessary to refer to them. The Statute is undoubtedly remedial,—intended to prevent vexatious and useless delay and expense in the administration of justice, and thus facilitate the collection of pecuniary claims, founded on written instruments, in cases where the defendant has no meritorious or available defence. In view of this, it should be liberally construed.

This action was brought on a contract between the city of Philadelphia, acting through the commissioners for the erection of the public buildings, of the first part, and the legal plaintiffs, of the second part, in connection with the contract of defendant company indorsed thereon. By the terms of the principal contract, the legal plaintiffs agree to grade and pave the roadways surrounding the new city hall, including Broad street from south curb on Penn square to north line of passenger railway track on Chestnut street, for a specified sum per yard, one fifth thereof to be paid by defendant company as per its contract, and the residue by the city. Defendant company's indorsed contract is as follows: "The Philadelphia Traction Company assent to the terms and conditions of the within contract, and agree to wholly assume, be responsible for and pay to the parties of the second part the one fifth of the cost of grading and paving the whole of the roadways surrounding the new city hall, and the one fifth part of the cost of grading Broad street from the south line of the curb on Penn square to the north line of the passenger railway track on Chestnut street, as within provided." Among other things, it is therein provided that the architect of the commissioners shall be the arbiter "as to the character of the work done, or materials furnished" under the contract, his decision "in every event to be final, binding and conclusive on the parties hereto." Copies of the foregoing contracts were duly filed by plaintiffs in connection with their averment to the effect that the total cost of grading and paving the roadways surrounding the Hall, at $3.50 per square yard, was $62,571.32, and the total cost of grading Broad street, at 62 cents per cubic yard, $771.59, in all, $63,342.91; that defendant company agreed to pay one fifth thereof, $12,668.58, but refused to do so, and the same has been paid to said legal plaintiffs by the city of Philadelphia.

The first ground of defence presented in defendant's affidavit is that the contract, a copy of which was filed, "is not such an instrument of writing as entitles the plaintiff to have and require of the said defendant an affidavit of defence thereto."

5 AMERMAN—19

In his opinion, discharging the rule for judgment for want of a sufficient affidavit of defence, the learned judge says: " The instrument sued on in the present case is an agreement to pay for work to be done thereafter. On the face of the paper there is no proof that the work was ever done at all, and the proof cannot be supplied by an averment."

As we have seen, the application of this rigid rule would exclude bills of exchange, negotiable notes, etc., in suits against parties secondarily liable thereon. There is nothing in the phraseology of the Act, requiring that every fact neces- sary to entitle plaintiff to recover, should appear on the face of the instrument. The "practical formula," referred to by the learned judge, viz.: " Whether the instrument itself makes so complete a case that a jury can give a verdict upon it alone without other evidence," is wholly unwarranted ; and, if sanc- tioned, would so curtail and cripple the operation of the Act as to render it comparatively valueless. It follows that the reason assigned for discharging the rule is erroneous.

The only remaining question is whether the affidavit of defence contains any averment of fact that entitles defendant to a jury trial.

It is not denied that the work of grading and paving, re- ferred to in the contract, was done, nor that the contract price and amount thereof are correctly stated in plaintiff's averment, nor that the character of the work done and materials furnished were duly approved by the architect of the commission, and the proper certificate issued to the legal plaintiffs, nor that defendant company refused to pay its proportion of the cost of the work, and that the same was thereupon paid by the use plaintiff; but the affidavit does aver that the work was not " completed in accordance with the said contract and specifica- tions," and then proceeds to say that five samples of asphalt, taken from said pavement, were left with " an expert to deter- mine if the pavement was laid of the quality and kind required by said contract and specifications." This is followed by a copy of the expert's analysis of three of the specimens sub- mitted to him, showing a deficiency of carbonate of lime and an excess of sand. To that is added an averment that defend- ant believes and expects to be able to prove the facts set forth in the analysis are true. The affidavit then concludes as fol- lows : " Defendant is advised that, as said roadway is not sub- stantially conformable to said contract and specifications and does not constitute an equivalent, no liability to pay for the same arises on the contract entered into by said defendant." In this connection, however, defendant's belief " that no liabil- ity to pay" arises, etc., is not averred. It is one thing for a defendant to say he is advised or informed that certain facts

exist, and that they create no liability; but it is quite a different thing for him to swear that he believes and expects to be able to prove they are true and constitute a valid defence.

It will be observed that the alleged defence on the merits is grounded solely on the allegation of deficiency in one of the ingredients and excess in another, as reported by the expert. But of what consequence is that, if the work done and materials furnished were approved by the architect? As we have seen, the architect of the commission is made sole arbiter as to the character of the work done and materials furnished, and his decision is expressly declared, "under all circumstances and in every event to be final, binding and conclusive on the parties." This being one of the "terms and conditions" to which the company defendant assented, how can it expect to evade the consequences of its covenant without such an averment of facts as will entitle it to go behind the approval of the architect and acceptance of the work, as having been performed according to the terms of the contract? It had no right to silently wait until the work was finished, approved by the party designated for that purpose, and taken off the hands of the contractors, and then, on some frivolous pretext, refuse to pay its proportion of the cost.

In view of the provisions of the contract to which defendant is a party, there is nothing in the affidavit of defence, assuming it all to be true, that entitles the company to a jury trial.

> Judgment reversed, and record remitted to the court below with directions to enter judgment against defendant, as to right and justice may belong, unless other legal or equitable cause be shown to said court why such judgment should not be entered.