AUGUSTUS FRANK AND EBEN O. McNAIR, APPELLANTS AND RESPONDENTS, *v.* CHARLES L. BINGHAM, RESPONDENT AND APPELLANT.

*Proceeds of a note sent to a bank for collection — when recoverable from the receiver of the bank.*

In an action brought to recover from the receiver of a bank the avails of a note which had been sent to it for collection, and had been collected by the bank, which failed immediately after such collection, it is necessary that the plaintiff should show that the avails of the note came into the hands of the receiver.

In case the proceeds of the note have been used by the bank prior to the appointment of the receiver, and are not represented in the assets in the hands of the receiver, the plaintiff is not entitled to a preference in the payment of his claim over other creditors of the bank.

APPEAL by the plaintiffs from a judgment, entered in the office of the clerk of the county of Livingston on the 3d day of July, 1890, in favor of the plaintiffs and against the defendant, for the sum of $270.04, including costs, so far as the justice before whom the action was tried, and who directed the entry of such judgment, refused to direct judgment for the further sum of $530.42 and interest, and by the defendant Charles L. Bingham, from so much of the said judgment as orders and adjudges "that the plaintiffs recover judgment against the defendant for the amount of $140.40, with interest thereon from the 18th day of August, 1887."

*J. A. Vanderlip*, for the plaintiffs.

*M. H. Briggs*, for the defendant.

DWIGHT, P. J. :

The action was to recover the avails of certain commercial paper forwarded by the plaintiffs to the First National Bank of Dansville for collection, and collected by the bank shortly before its failure in 1887. The defendant is the receiver of the bank, though sued in his individual name, and the complaint demands judgment against him, to " be paid by the defendant out of any moneys in his hands as such receiver, before making any distribution of the money or property of the said First National Bank of Dansville, to the general creditors of the said bank and in preference thereto."

The plaintiffs were private bankers at Warsaw, in the county of Wyoming; the First National Bank of Dansville was, as its name imports, a banking corporation organized under the laws of the United States, doing business at the village of Dansville, in Livingston county. The plaintiffs were accustomed to send commercial paper held or received for collection by them and payable at Dansville, to the bank mentioned, for collection ; and it was the custom of the bank to remit the avails of such collections, less commissions, by drafts drawn by it on its correspondent in the city of New York. On the 16th day of August, 1887, the plaintiffs mailed to the bank at Dansville, for collection and remittance, four checks drawn on that bank by depositors therein, aggregating $435.84, and a note of one Beyer for $140.40, payable at the same bank on the eighteenth day of the same month. The paper was received at the bank on the seventeenth, the checks were charged to the several accounts of the drawers, which were good for the amounts, and on the same day the bank remitted to the plaintiffs its draft on New York for the aggregate amount of the checks, less fees for the collection. The note of Beyer was paid in cash on the eighteenth. The money was not kept separate from, but was mingled with other cash on hand, of which about $2,000 was received, and much more than the amount of the note was paid out the same day. On the same day the bank sent to the plaintiffs its draft as usual, for the amount of the note, less fees for collection. On the twentieth of the same month the plaintiff sent to the bank at Dansville two

more checks drawn upon it by its customers, aggregating ninety-four dollars and eighteen cents. These were received on the twenty-second, and, as before, charged to the several accounts of the drawers, which were good for the amounts. On the twenty-third the bank closed its doors on account of insolvency, having received and paid out money in the usual course of its business down to and including that day. Neither of the drafts remitted to the plaintiffs was paid. Soon afterwards the defendant was duly appointed receiver of the bank under the laws of the United States. He immediately qualified as such and took possession of the assets of the bank. He found among those assets the sum of $189.19 in cash, which he turned over as required by law, to the comptroller of the currency of the United States. Since that time, and including that amount, he has collected from the assets of the bank about $11,000. Some time after his appointment as receiver, but how long after does not appear, except that it was before the commencement of this action, the plaintiffs demanded of him the avails of the six checks and the note above described, and payment being refused they brought this action.

The theory of the action is, distinctly, that of a trust impressed upon the avails of the several collections in the hands of the bank, and accompanying those avails into the hands of the receiver. The court, at Special Term, sustained that theory in respect to the avails of the note of Beyer, but found it not applicable to the case of the checks, and gave judgment against the defendant for the amount of the note, with interest, and for costs. We think the theory fails of application to any portion of the plaintiff's demand, for the reason that it is not shown that any portion of the funds in question came into the hands of the receiver.

No principle seems to be better established than that, "in order to follow trust funds and subject them to the operation of the trust, they must be identified." The rule is stated in those terms by ANDREWS, J., in *Cavin* v. *Gleason* (105 N. Y., 256). Of course, it is not intended that, in the case of money, the particular coin or bank-notes must be found to be, or shown to have been, in the hands of the person sought to be charged with the trust. On the contrary, the opinion from which we quote recognizes and formulates the rule in equity " that, as between *cestui que trust* and trustee and all parties claiming under the trustee, otherwise than by purchase for a valuable

consideration, without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust;" and further on the same learned judge says: "A court of equity, in pursuing the inquiry and in administering relief, is less hampered by technical difficulties than a court of law; and it may be sufficient, to entitle a party to equitable preference in the distribution of a fund in insolvency, that it appears that the fund or property of the insolvent remaining for distribution includes the proceeds of the trust estate, although it may be impossible to point out the precise thing in which the trust fund has been invested, or the precise time when the conversion took place."

In this case, as we have seen, the court found in favor of the plaintiffs for the amount of the Beyer note, but there was no finding that the avails of the note ever came into the hands of the receiver, nor that they were not wholly paid out on other demands against the bank before it closed its doors. Such a finding could not have been sustained upon the evidence in the case; the almost necessary inference therefrom being to the contrary. The bank did business on what must have been a very narrow margin of cash for five days after the $140 was received in payment of the note, and at the end of that time had only $189 of cash on hand. In the nature of things it was impossible to identify any portion of the avails of the note with any portion of the scarcely larger amount of cash which came into the hands of the receiver; the latter was as likely to be the avails of any other collection made at about the same time, as of the Beyer note. And in this connection it is interesting to learn from the report of the case of *Arnot* v. *Bingham* (29 N. Y. St. Rep., 878), that the same small residue of cash which came into the hands of the receiver, had, when this action was tried, already been adjudged to be the property of the plaintiffs in that action, upon facts almost precisely similar to those presented by the record before us. That judgment was rendered at Special Term in the sixth district, and was affirmed, with hesitation, by the General Term in the fourth department. The case, though fully sustaining the legal contention of counsel for the plaintiffs, was naturally, perhaps, not cited by him in his

argument here, but our attention was called to it by counsel for the defendant as curiously illustrating the necessity of an actual identification of some portion of the fund which passed to the receiver with the particular trust fund sought to be recovered in the action. Should both of these Special Term judgments be finally affirmed, we should have the same small balance of cash which came into the hands of the receiver judicially determined to belong to two different parties, by reason of its being held to be the same money received in trust for both; and if one should be finally affirmed, and not the other, we are at a loss to see upon what principle the preference would be given. The General Term in the fourth department, in an opinion by MARTIN, J., admits "that the question whether the fund recovered in this (that) action was, in fact, the property of the plaintiffs, or so far impressed with a trust in their favor as to constitute them equitable owners thereof, is not free from doubt;" but that court was inclined to the opinion that the doctrine of the case of the *People* v. *The City Bank of Rochester* (96 N. Y., 32), justified the holding of the trial court.

The case thus referred to is also the authority chiefly relied upon by counsel for the plaintiffs in this action. We are unable to give to it the same effect as our brethren in the fourth department, especially in view of the explanation and qualification given to it by the court in the later case of *Cavin* v. *Gleason* (*supra*). In the latter case the court say : " The case of the *People* v. *The City Bank of Rochester* (96 N. Y., 32) seems to have been misunderstood. The question in this case was not raised there, and it was not claimed in that case that the proceeds of the checks of Sartwell, Hough & Co., the petitioners, had not gone into the general funds of the bank, or that they had not passed in some form to the receiver. The court did not decide, nor intend to decide, that the petitioners would have been entitled to a preference in case the proceeds of the check had been used by the bank and were not represented in its assets in the hands of the receiver."

Thus explained and qualified, the case of the City Bank of Rochester is saved from conflict with the doctrine so clearly expounded in our previous quotations from the opinion in *Cavin* v. *Gleason*.

We think that doctrine is fatal to the plaintiffs' contention in this case, and, accordingly, that the judgment of the Special Term, so

far as it awards a recovery to the plaintiffs, should be reversed and judgment absolute ordered for the defendant.

Macomber and Corlett, JJ., concurred.

That portion of the judgment appealed from by the defendant reversed; in other respects judgment affirmed and the complaint dismissed, with costs of this appeal and of the Special Term to the defendant.