BARCLAYS BANK, LIMITED Paintiff, *v.* THE BANK OF UNITED STATES, Defendant.

First Department, July 1, 1932.

*T. F. D. Haines* of counsel [*Gerhard R. Gerhard* and *Lee J. Perrin* with him on the brief; *Appleton, Rice & Perrin,* attorneys], for the plaintiff.

*Arthur Ofner* of counsel [*Walter Bishop* and *Julius L. Neidle* with him on the brief; *Carl J. Austrian,* attorney], for the defendant

McAvoy, J.   Defendant is a New York bank and plaintiff is a British bank with its head office in London.   Defendant had a standing arrangement with plaintiff that plaintiff should accept drafts drawn upon it under letters of credit issued by defendant and that defendant would pay to plaintiff the face amounts of any such accepted drafts on their respective maturity dates.

Defendant, at the request of a New York buyer who wished to purchase goods from abroad, issued a letter of credit under which drafts were to be drawn on plaintiff.   In consideration therefor the buyer agreed to furnish defendant one day before the maturity of drafts sufficient funds in cash to meet the payment of the drafts.

A draft was drawn upon plaintiff under the letter of credit, was presented for acceptance to plaintiff and was accepted by plaintiff. The relative merchandise bills of lading were then forwarded to defendant and were delivered by defendant to the buyer against the buyer's trust receipt.

At maturity the draft was presented for payment to plaintiff and was paid by plaintiff.   Defendant received from the buyer in cash the face amount of the draft; but prior to maturity of the draft defendant was closed by the Superintendent of Banks and has not paid the face amount of the draft to plaintiff.

In the first submitted controversy the letter of credit beneficiary

(the drawer of the draft) was the seller of the goods, and in the second and third controversies the drawer was the buyer's purchasing agent.

The payment from the buyer was received by defendant in the first and second controversies after its closing and in the third controversy before its closing. The payments so received after the closing are being held by the Superintendent in escrow in a special trust account, pending the determination of plaintiff's rights.

The transactions are as follows:

In the Siff transaction a draft in the sum of £58 11s. 7d. was accepted by Barclays to mature February 3, 1931; upon which date it was paid; Siff Bros. had a balance of $95.98 in its general checking account maintained with the Bank of United States, at the time of the suspension of the latter, and on June 27, 1931, Siff Bros., in order to discharge its liability under the letter of credit transaction, paid to the Superintendent of Banks the sum of $198.71, the difference between the dollar equivalent of the face amount of the draft and the amount of the deposit balance in favor of Siff Bros., under an agreement by the Superintendent to hold the said $198.71 in escrow pending the determination of the rights of plaintiff, if any, thereto.

In the Kadans Steinberg Co., Inc., transaction a draft in the sum of £1,956 1s. 3d. was duly accepted by Barclays to mature on December 27, 1930, at which time the draft was. paid; and on February 10, 1931, Kadans, Steinberg Co., Inc., in order to discharge its liability under the letter of credit transaction, paid the sum of $9,501.57, the dollar equivalent of the draft, to the Superintendent to be held by. him in escrow pending the determination of the rights of plaintiff, if any, thereto.

In the Schild transaction a draft was duly accepted by Barclays to mature on December 27, 1930, at which time it was paid. Prior to the suspension of the Bank of United States, and on November 22, 1930, Schild directed the Bank of United States to discharge its obligation arising out of the transaction by deducting the amount thereof from its general checking account maintained with the Bank of United States; and on that day the bank debited Schild's general checking account the sum of $2,493.53. This sum represents the face of the draft plus $12.42, the Bank of United States' commission, less an interest allowance of $3.33. Neither the $2,484.44 nor any other assets of the bank were set aside or earmarked for the purpose of paying the draft or for any other purpose. The prepayment by Schild of $2,484.44 was commingled with the general assets of the Bank of United States, pursuant to the general

practice among New York State banks doing a commercial letter of credit business.

Plaintiff's contention is that it is entitled to reclaim and recover in full from defendant the sum so received by defendant from the buyer under each of the three letters of credit, less the amount of the dividends already paid by defendant to plaintiff on plaintiff's claim. Defendant asserts in its behalf that plaintiff is only a general creditor to the amount of the three payments and is, therefore, entitled to nothing more than a proportionate liquidation dividend.

We conclude that the accepting bank, having paid the drafts, is entitled to be paid in full the covering funds paid by the buyer to the issuing bank after its closing and that there is no essential distinction in the instance of payment of covering funds by the buyer to the issuing bank before its closing and a similar right to payment thereof runs to the accepting bank.

The covering funds so paid on account of the drafts drawn against the issuing bank's letter of credit are specific funds intended to discharge the obligation of the seller or drawer of the draft to the issuing bank when that bank, as is usually the case, acts without a correspondent such as an accepting bank. Where an accepting bank has paid the drafts the benefit of the agreement runs to the acceptor and payment to it would discharge the debt to the issuing bank on the agreement to cover the drafts drawn on the credit with necessary funds in the event of the issuing bank's insolvency. If this be not the rule the issuing bank would collect in full from the buyer the funds to cover the drafts and pay on its obligation to the acceptor correspondent only a liquidation dividend. The issuing bank and its general creditors would thus derive an unearned increment in the gap between the amount of dividend disbursed in liquidation and full amount collected from the buyer.

We think that the various equitable rules designed to remedy the loss of one who pays the obligation of another so that he may be requited in full through the security or rights of his debtor ought here to be invoked and applied. With that view we think judgments should go for plaintiff.

FINCH, P. J., MERRELL, MARTIN and TOWNLEY, JJ., concur.

Judgments directed for plaintiff. Settle orders on notice.