78

## In re United Security Trust Company. No. 2

*David H. Frantz*, of *Drinker, Biddle & Reath*, for exceptants.
*Arthur Hagen Miller*, contra.

MacNeille, J., October 11, 1933.—On July 20, 1931, prior to its closing, the trust company delivered to Mrs. Susa Hays Mirkil and Mr. H. Hays Mirkil a travelers' letter of credit whereby Brown Brothers Harriman & Co. agreed to honor drafts drawn upon them by either of the said parties in the maximum amount of $2,000. On the same day the Mirkils, who had on deposit in their checking accounts more than $2,000, drew checks in that amount on their accounts and delivered the same to the trust company, which credited said $2,000 in the account denominated "Letters of Credit Issued Account." This fund was commingled with other funds, but there was at all times more money in the trust company than was contained in this "Letters of Credit" account.

Subsequently, the Mirkils drew upon Brown Brothers Harriman & Company under the said letters of credit for the full amount of $2,000, and the trust company closed before Brown Brothers Harriman & Company collected any of the said money. In the account filed this claim was admitted as a general claim, and exceptions were filed on behalf of the claimants, alleging that they are entitled to priority.

The most recent case in which this question has come before an appellate court is Barclays Bank, Ltd., v. The Bank of United States, 236 App. Div. (N. Y.) 150, 258 N. Y. Supp. 317 (July 1, 1932). A motion for reargument was filed before the same court and denied on October 21, 1932, reported in 236 App. Div. (N. Y.) 793, and an appeal was then taken to the Court of Appeals of New York and the decision was affirmed by it (261 N. Y. 688) on April 18, 1933. In that case, the defendant had a standing arrangement with the plaintiff that the plaintiff should accept drafts drawn upon it under letters of credit issued by the defendant, and that defendant would pay the plaintiff the face amounts of any such accepted drafts. Three drafts were paid by the plaintiff. In each case the defendant had received in cash the face amount of the drafts, but before it paid them over to the plaintiff it was closed.

In one of the transactions, the defendant was paid the amount of the draft by deducting the amount thereof from the general checking account of its depositor, who was the recipient of the letter of credit and who had ordered the bank to make this deduction. Plaintiff contended that it was entitled to recover in full from the defendant the sums received by the defendant, and the defendant asserted that the plaintiff was only a general creditor.

The court said:

"We conclude that the accepting bank, having paid the drafts, is entitled to be paid in full the covering funds paid by the buyer to the issuing bank

after its closing and that there is no essential distinction in the instance of payment of covering funds by the buyer to the issuing bank before its closing and a similar right to payment thereof runs to the accepting bank.

"The covering funds so paid on account of the drafts drawn against the issuing bank's letter of credit are specific funds intended to discharge the obligation of the seller or drawer of the draft to the issuing bank when that bank, as is usually the case, acts without a correspondent such as an accepting bank. Where an accepting bank has paid the drafts the benefit of the agreement runs to the acceptor. . . .

"We think that the various equitable rules designed to remedy the loss of one who pays the obligation of another so that he may be requited in full through the security or rights of his debtor ought here to be invoked and applied."

The law in New York State with reference to the necessity of tracing trust funds is not unlike ours. In the case of In re North River Bank, 60 Hun 91, 14 N. Y. Supp. 261, trust funds which were placed in a bank 2 hours before it closed its doors were denied recovery because the claimant could not trace the money into the hands of the receiver, and to the same effect are the cases of Williams v. Van Norden Trust Co., Assignee (1905), 104 App. Div. 251; Frank et al. v. Bingham, 58 Hun 580, 12 N. Y. Supp. 767; and Lebaudy v. Carnegie Trust Co. et al. (1915), 90 Misc. 490, 154 N. Y. Supp. 900. Some of the differences which did exist have been eliminated by the Bank Collection Act of June 12, 1931, P. L. 568.

In the case of American Express Co. v. Cochrane, Liquidator, 103 Fla. 426, 137 So. 696, the same question came before the Supreme Court of Florida in November of 1931. The facts are exactly identical with the facts in the claim of the American Express Company in this case, where travelers' checks were sold by the defendant and before the money was transmitted the bank was closed and it was held that the claimant was entitled to a preference.

A claim in which the facts are exactly identical with the facts in this case came before Judge Finletter in the Bankers Trust Company of Philadelphia matter, Court of Common Pleas No. 4, December Term, 1930, No. 5553, and he there decided that the claimant was entitled to a preference over the depositors and general creditors, basing his conclusions on a line of reasoning very similar to that in the Barclay's Bank case, supra.

A similar claim, by the same claimant as in this case, also came before Judge Leach in the Anthracite Trust Company of Scranton case, Lackawanna County, November Term, 1931, No. 664, and he came to the conclusion that the claimant was entitled to priority of payment in full, basing his decision squarely on the Barclay's Bank, Ltd., case, and on Judge Finletter's case.

A claim of American Express Company for priority was before Judge McDevitt in the Security Title and Trust Company of Philadelphia case, Court of Common Pleas No. 1, March Term, 1931, No. 9396, based on the proceeds of the sale of travelers' checks, and he decided that the claimant was entitled to priority, basing his decision on the interpretation placed by Judge Ferguson in the case of In re Susquehanna Title and Trust Co., 16 D. & C. 530, on the decision of the Supreme Court in the case of Cameron v. Carnegie Trust Co., 292 Pa. 114.

The most recent decision in this State on this question is that of Judge Wickersham in In re Mechanics' Trust Co., 37 Dauph. 274 (July 24, 1933), which was also a claim of American Express Company, and he concluded that it was entitled to claim priority, after reviewing many of the decisions involving trust funds in closed banks. He based his decision on Webb v. Newhall, Assignee,

274 Pa. 135, and Conneautville Bank's Assigned Estate, 280 Pa. 545, holding that the relation between the claimant and the bank was that of bailor and bailee, and that therefore the situation was similar to that which arose in the Conneautville Bank's Assigned Estate case. He further held that the case of Commonwealth v. Tradesmen's Trust Co. (No. 1), 250 Pa. 372, did not apply, and that the case of Metropolitan Life Insurance Company's Appeal, 310 Pa. 17, was distinguishable from that case because in the former case the relationship was that of principal and agent and in the latter, that of bailor and bailee.

A contrary decision was reached in this State in the case of Eppinger, Exec., v. Allen et al., Trustees, 8 D. & C. 321, and a contrary decision was also reached in cases involving similar questions in the cases of Kuehne v. Union Trust Co., 133 Mich. 602, and Taussig v. Carnegie Trust Co. et al., 156 App. Div. (N. Y.) 519, affirmed 213 N. Y. 627.

The weight of authority, however, both in this State and in other jurisdictions, is to permit such claims priority over those of depositors.

Whether section 13 (c) of the Bank Collection Act of 1931 would apply to the situation in this case has never been passed upon. This section provides as follows:

"Where an agent collecting bank, other than the drawee or payor, shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

In section 1, the act defines "item" as "any check, note, or other instrument providing for the payment of money." Letters of credit partake of the nature of negotiable instruments: Liggett v. Levy et al., 233 Mo. 590, and Second National Bank of Toledo v. M. Samuel & Sons, Inc., 12 F. (2d) 963. The words "other instruments for the payment of money" have been construed to include an endorsement on a contract between the city and a contractor for constructing a pavement, by which endorsement defendant agreed to be responsible to plaintiff for a certain proportion of the price of such construction: The Vulcanite Paving Co. et al., to use, v. The Philadelphia Traction Co., 115 Pa. 280; and a suit for wages on a written contract of employment: Sutton v. Athletic Baseball Club, 4 W. N. C. 90. It certainly would, therefore, include travelers' checks and letters of credit, and since the letters of credit were entrusted to the trust company by the claimant, and it was to collect the funds on them and was to transmit the funds to the claimant, and the trust company was closed before the proceeds were remitted by the trust company in money, and since no unconditional credit was requested or given on the trust company's books or on the books of any other bank, if the provisions of the act apply to letters of credit and travelers' checks the assets of the closed bank would be impressed with the trust in favor of the claimants, and the claimants would be entitled to a preferred claim irrespective of their ability to trace the money as part of such assets.

In the case of Schuylkill Navigation Co. v. Loose, 19 Pa. 15, it was held as follows:

"Where the reason of a rule is general, and the provision special, the rule is general in its application. *Ubi lex specialis est, et ratio ejus generalis, generaliter accipienda est;* 2 *Inst.* 43. And this maxim is especially applicable to laws providing remedies. There the words are to be taken, not literally, but according to the intent of the Legislature and such construction is always to be made that the party grieved and in equal mischief, may be relieved; 2 *Inst.* 680. Of this rule Lord Coke gives many illustrations, to which we can only make reference: 2 *Inst.* 291, 322, 346, 427, 429, 476, 502, 681; *Hob.* 122.

"Our own case of Voeghtly *v.* The School Directors, 1 *State Rep.* 330, is an instance of the application of the principle; though the law was not a remedial one. The law taxes debts due on promissory notes, bonds, mortgages, and judgments; and these were held to be but examples, and not to exclude debts due on articles of agreement for the sale of land."

Inasmuch as the claimants in this case sent letters of credit to the trust company so that it could collect the proceeds for the claimants, they should not be in any different position than if they had sent a check or draft to the trust company for collection and it was closed before the money was remitted to the claimants.

The exception is therefore sustained, and the amount of $2,000 is awarded to the claimants with preference over the depositors and general creditors.

The claim of Brown Brothers Harriman & Company relative to the letter of credit delivered by the trust company on July 25, 1931, to Clara L. Berkowitz, is a matter of $500 deposited by Clara L. Berkowitz, or on her behalf, in exchange for letter of credit in like amount. It was credited in the account denominated "Letters of Credit Issued Account". Mrs. Berkowitz drew a draft in the full amount of $500 on Brown Brothers Harriman and Company under such letter of credit. In all respects this claim is the same as the Mirkils' claim discussed supra, and we are forced to the conclusion that this claim should be allowed in the sum of $500 with preference over depositors and general creditors.