CATSKILL NATIONAL BANK, Respondent, v. THOMAS H. DUMARY, Appellant.

Guaranty — construction of contract of guaranty — when changes are made in printed form of contract by striking words therefrom and substituting others in place thereof the court may consider original form and changes therein to find intention of parties.

1. Where a guaranty in writing is made at the time a contract is executed the instruments are to be considered as one for the purpose of interpretation.

2. The rule that the intention of the parties is to be ascertained and enforced, if it be lawfully and adequately expressed in the instrument, is not changed by the fact that a party thereto is a guarantor, although the contract of a guarantor when determined is not to be extended by implication or construction.

3. The conditions under which a contract was executed may be reproduced so far as possible in connection with the language used and the subject-matter of the negotiation of the parties, and where changes have been made in a printed form before execution, the court for the purpose of arriving at the intention of the parties may consider the form as it was originally, the words stricken from it, and those added to it.

4. Effect of certain changes by striking from and adding to a printed form of contract considered, and *held*, that the guarantor was not thereby relieved from liability upon a note made by his principal to recover upon which this action was brought.

*Catskill Nat. Bank* v. *Dumary*, 142 App. Div. 118, affirmed.

(Argued October 21, 1912; decided December 10, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 20, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Peter A. Delaney* and *Albert Hessberg* for appellant. The defendant Dumary, under the terms of his contract

of guaranty, is not liable to the plaintiff Catskill National Bank upon the note here in suit. (*Coleman* v. *Beach,* 97 N. Y. 545; *Griffiths* v. *Hardenbergh,* 41 N. Y. 464; *Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *H. C. & C. Co.* v. *E. C. & C. Co.,* 113 Fed. Rep. 256; Bishop on Cont. [2d ed.] §§ 371, 372, 380; *Wilson* v. *Troup,* 2 Cow. 195; Chitty on Cont. [6th Am. ed.] 89; *Strickland* v. *Maxwell,* 2 C. & M. 239.) The guaranty of the defendant Dumary extended to the giving by said Albany Contracting Company of the notes provided for in said contract between said The Eastern Paving Brick Company and said Albany Contracting Company, dated June 15, 1901, but did not extend to their payment. (*E. Nat. Bank* v. *Kaufman,* 93 N. Y. 273; *People* v. *Backus,* 117 N. Y. 196.) Neither the contract of June 15, 1901, between the Eastern Paving Brick Company and Albany Contracting Company, nor the guaranty thereof of the defendant Dumary was ever assigned, in whole or in part, directly or indirectly, to the plaintiff herein, Catskill National Bank, and said plaintiff is wholly a stranger to said contract. (*Gamewell* v. *Pomeroy,* 121 Mass. 207; *Levy* v. *Cohen,* 103 App. Div. 195; *De Luka* v. *Goodwin,* 142 N. Y. 194; *Clokey* v. *E. & T. H. R. R. Co.,* 16 App. Div. 304.) The contract of guaranty of the defendant Dumary is not divisible. (*Pakas* v. *Hollingshead,* 184 N. Y. 211; *Clokey* v. *E. & T. H. R. R. Co.,* 16 App. Div. 304.) Under the allegations of the complaint herein plaintiff, Catskill National Bank, cannot successfully invoke the doctrine of equitable subrogation, and subrogation will not support the plaintiff's claim. (*Mansfield* v. *City of New York,* 165 N. Y. 208.)

*Marcus T. Hun* for respondent. The guaranty " of all the obligations of the foregoing contract " covered and comprehended the note in question, which was defined in and was given under the provisions of said contract. (*Murphy* v. *Hart,* 122 App. Div. 548.) The

cancellation of the clause in the contract of June 15, 1901, did not affect the liability of Dumary under his guaranty. (*F. Nat. Bank* v. *Woolsey,* 31 App. Div. 61; *D., L. & W. R. R. Co.* v. *Burkard,* 114 N. Y. 197.) The contract and the guaranty are to be construed together as one instrument. (*Everson* v. *Gere,* 122 N. Y. 290.) The guaranty was a general guaranty and not a special one, and inured to the benefit of all parties acquiring interest under the contract. (*Stillman* v. *Northrup,* 109 N. Y. 473; *McLaren* v. *Watson,* 26 Wend. 425; 19 Wend. 557.) This contract of guaranty is to be construed in the same manner as ordinary contracts. (*Smith* v. *Molleson,* 148 N. Y. 241; *People* v. *Backus,* 117 N. Y. 196; *Belloni* v. *Freeborn,* 63 N. Y. 383; *Gates* v. *McKee,* 13 N. Y. 231; *Krakauer* v. *Chapman,* 16 App. Div. 115; *Gamble* v. *Cuneo,* 21 App. Div. 413; *Walrath* v. *Thompson,* 4 Hill, 200.) The doctrine of equitable subrogation is applicable to this case in which the plaintiff as holder of this note is entitled to be subrogated to whatever rights the Eastern Paving Brick Company, its indorser and predecessor in title had. (1 Story's Eq. Juris. [10th ed.] 626, § 633; *Morehouse* v. *B. H. R. R. Co.,* 185 N. Y. 520; *C. T. S. D. & S. Co.* v. *Haaslocher,* 101 App. Div. 415; *Cheesebrough* v. *Millard,* 1 Johns. Ch. 408; *Barnes* v. *Mott,* 64 N. Y. 397; *Besley* v. *Lawrence,* 11 Paige, 581.) This doctrine of equitable subrogation applies to the case of a surety, although the party subrogated has no knowledge of the transaction. (*Wagar* v. *Link,* 134 N. Y. 122; *Morehouse* v. *B. H. R. R. Co.,* 185 N. Y. 520; *Vail* v. *Foster,* 4 N. Y. 321; *Keller* v. *Ashford,* 133 U. S. 610; *Crosby* v. *Krafts,* 5 Hun, 329; *Curtis* v. *Tyler,* 9 Paige, 432.) Indorsers of paper are within the rule that gives the creditor the right to enforce any obligations held by the surety for the payment of the debt. (*Nat. Ex. Bank* v. *Silliman,* 65 N. Y. 475.) The assignment of the note was effective to transfer the debt, and by the transfer of the

debt transferred any collateral held to secure its payment. (*Spears* v. *Mayor, etc.,* 87 N. Y. 359; *Gallagher* v. *Nichols,* 60 N. Y. 438; *Bolan* v. *Crosby,* 49 N. Y. 183; *Claflin* v. *Ostrom,* 54 N. Y. 581; *Rose* v. *Baker,* 13 Barb. 230; *Pattison* v. *Hull,* 9 Cow. 747; *Bowdoin* v. *Colman,* 6 Duer, 182.) The contract provided that the contract obligation, notwithstanding the issuing of the note, should remain unimpaired, and, as by the transfer of the note the debt itself represented by the contract passed, the plaintiff was entitled to be subrogated to whatever rights for the enforcement of that debt existed in the insolvent, the Eastern Paving Brick Company. (*Stillman* v. *Northrup,* 109 N. Y. 473; *Craig* v. *Parkis,* 40 N. Y. 181; *Barlow* v. *Myers,* 64 N. Y. 44; *Lahmers* v. *Schmidt,* 35 Minn. 435; *George* v. *Tate,* 102 U. S. 571; *F. Nat. Bank* v. *Woolsey,* 31 App. Div. 61; *Parmelee* v. *Dann,* 23 Barb. 461.) The Eastern Paving Brick Company being insolvent, and holding the obligation of Dumary as security for the note, could be compelled to enforce that security. To avoid circuity of action the Catskill National Bank may enforce the guaranty. (*Putnam* v. *Lewis,* 8 Johns. 389; *Burdick* v. *Green,* 15 Johns. 247; *Riddle* v. *Mandeville,* 5 Cranch, 322; *Curtis* v. *Allen,* 9 Paige, 432; *Crosby* v. *Crafts,* 5 Hun, 327; *Matter of Sauthoff,* 7 Biss. 167; *Firestone & Co.* v. *Agnew,* 194 N. Y. 165.)

COLLIN, J.   The plaintiff recovered a judgment against the defendant upon his guaranty of full performance by the Albany Contracting Company, a corporation, of all the obligations of a contract of June 15, 1901, between that company and the Eastern Paving Brick Company, a corporation. Pursuant to the provisions of the contract a promissory note dated November 3, 1901, for $2,000, payable three months after date to the order of the Brick Company, with interest, was made by the Contracting Company, delivered to and indorsed by the Brick Company, and on November 4, 1901, delivered to and accepted

by the plaintiff in the place of the original note, which it held and surrendered. This note was not paid and was duly protested for non-payment. The action was to recover the amount payable thereunder.

The appellant asserts that the defendant did not guarantee the payment of the note. The assertion is based primarily upon certain facts appearing upon the face of the contract. The contract was executed upon a printed blank form furnished by the Brick Company. In the form the part material here was: " The party of the second part (the Contracting Company) agrees to pay for the aforesaid brick at the prices hereinbefore named and as follows: To advance the freight and unloading charges on demand, and to pay the balance of said purchase price in cash to the party of the first part (the Brick Company) or its order within  * * *  days from the date of the invoices, invoices to be dated on the days shipments leave Catskill, New York. Interest to be charged at the legal rate (five per cent.) after the account shall have become due. Or, if the party of the first part so desires, the party of the second part will give to the party of the first part its note at  * * *  days from date of shipments, without interest, with the same individual security which guarantees this contract. But said note shall not be considered to relieve either the principal or the indorser of said note from any obligation which may be carried by this contract." In this clause of the contract, as executed, the words " and unloading " were struck out and in the first blank space were inserted the figures " 90," in the second blank space was inserted in writing the word " ninety," the words " with the same individual security which guarantees this contract" were struck out, and there were added in writing at the close of the clause the words " It being mutually understood and agreed by both parties to this contract, that should it become necessary to renew any of these notes, the party of the first part agrees to do so, for a length of time not

to exceed ninety (90) days from the date of such renewal, the party of the second part agreeing to pay the collection charges, and one half of the interest on such renewals."

The appellant urges that the striking out of the words "with the same individual security which guarantees this contract" evidences an agreement of the parties that a note given by the Contracting Company was to be without the individual security which guaranteed said contract, to wit, the guaranty of the defendant.

We are to ascertain, if possible, whether the three parties, when they made the contract, intended that the defendant guaranteed that the Contracting Company would perform the obligation expressed by the note. The guaranty was made at the time the contract was executed and for the purpose of interpretation the instruments are to be considered as one. (*Everson* v. *Gere*, 122 N. Y. 290.) The fact that the defendant was a guarantor does not change the rule of interpretation that the intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument. Where the question is as to the meaning of the language of the contract, there is no difference between the contract of a guarantor or surety and any other contracting party. The contract of the former, however, when determined, is not to be extended by implication or construction. (*Gates* v. *McKee*, 13 N. Y. 232; *Belloni* v. *Freeborn*, 63 N. Y. 383.) The conditions under which the contract was executed may be reproduced, in so far as the findings of the trial court enable, in connection with the language used and the subject-matter of the negotiations of the parties. (*Bank of Montreal* v. *Recknagel*, 109 N. Y. 482.) We may consider the printed form as it originally was, the words stricken from and those added to it. (*Strickland* v. *Maxwell*, 2 C. & M. 539.)

Inasmuch as the printed, blank form of the Brick Company was used in making the contract, including the

guaranty, the form probably stated the original proposition of that company for the contract. The conclusion that the words "with the same individual security which guarantees this contract" required the indorsement of the notes by the guarantor of the contract is reached not only from the words themselves, but from the sentence which immediately follows them: "But said note shall not be considered to relieve either the principal or the indorser of said note from any obligation which may be carried by this contract." The manifest purpose of the notes provided for in the contract was to enable the Brick Company, through the discounting or sale of them, to obtain in cash, less the discount, the price of each invoice immediately upon its shipment. The Contracting Company was unwilling that its notes, creating an absolute liability at the end of ninety days, should be transferred to third parties. The defendant was unwilling that notes, in probably a large number and of substantial amounts, bearing his indorsement should exist in the financial or commercial community. The Brick Company was unwilling to yield its desire to have the notes and in obviation of the objection of the Contracting Company entered into the obligation to renew, if necessary, any of the notes for a period not to exceed ninety days from the date of the renewal, the Contracting Company, as an inducement thereto, agreeing to pay the charges of the discounting banks or holders for collecting the notes and one-half of the interest on such renewals; and the Brick Company aware or acquiring knowledge, as may be reasonably presumed, that the discounting of the notes could be effected upon the credit of the Contracting Company and of itself as the indorser, consented to the striking out of the words "with the same individual security which guarantees this contract." The striking out of those words does not indicate an intention or understanding of the parties that the defendant did not guarantee the payment of the note, because

there was left the sentence: "But said note shall not be considered to relieve either the principal or the indorser of said note from any obligation which may be carried by this contract." We think the retention of the words "or the indorser" in this sentence indicates the intention of the parties in regard to the issue at hand more clearly than any other provision or feature of the contract. The appellant concedes, if we understand the language of his brief, and it is unquestionable, that those words designate or refer to the defendant. The contract is carefully and cautiously drawn. In the minds of the parties the defendant was regarded and deemed to be the indorser of the notes. He is to be liable for or upon them under his guaranty, and that liability or obligation should not enable him to successfully maintain that the notes were an absolute payment of the purchase price of the bricks or the release of any other obligation on the part of the Contracting Company or himself expressed in the contract. If he were not to be so liable the words "or the indorser" would have been stricken out with the words "with the same individual security which guarantees this contract." The contracts of indorsement and guaranty are analogous and are not infrequently regarded as synonymous when applied to commercial paper. The word "indorser" in the quoted words is the equivalent, within the intention of the parties, of the word "guarantor." This construction is reasonable and just. An obligation on the part of the Contracting Company was to pay the price of each invoice within the ninety days following its shipment. Another obligation was that, upon the request of the Brick Company, it would give upon each shipment its note for the price thereof at the ninety days without interest. The guaranty of full performance of all the obligations of the contract would include, in the absence of a fact supporting the contrary intention, the obligation to pay the notes which the contract required to be given.

The legality and transferability of the note is not ques-

tioned. It is obvious that the parties by their express agreement made the obligation to pay the purchase price divisible. Delivery and payment were to be in installments. The guaranty was general in its nature (*Everson* v. *Gere*, 122 N. Y. 290), and, under the established rule of law, made the defendant liable to the plaintiff as the holder of the note if the maker failed to pay at its maturity. (*Ketchell* v. *Burns*, 24 Wend. 456; *Claflin* v. *Ostrom*, 54 N. Y. 581; *Stillman* v. *Northrup*, 109 N. Y. 473.)

If the facts did not adequately support our conclusion, the judgment should then be affirmed upon the ground that the plaintiff is entitled to be subrogated to the right of action in favor of the Brick Company against the defendant upon his guaranty of the payment of the debt for which the note was given. This assumes that the defendant did not guarantee the performance of the obligation created by the note, and makes material the additional facts that since August, 1902, the Contracting Company has been insolvent, and since about February, 1902, the Brick Company has been insolvent and all its assets have been in the possession of a receiver. There are before us the plaintiff, who is the creditor, the Contracting Company liable as the maker of the note, the Brick Company liable as the indorser, and the defendant liable to the Brick Company for the debt evidenced and represented by the note. Each of the maker and indorser was at the commencement of the action and is insolvent, and consequently plaintiff's right of action upon the note availed it nothing. The defendant is liable to the indorser for the debt for which the note was given. The defendant ought to pay the Brick Company the moneys which it ought to pay the plaintiff. Because the Brick Company is insolvent, those moneys will not reach the plaintiff except through the application of equitable principles, if there are equitable principles applicable. A rule within those constituting the doctrine of subrogation is that the creditor shall have the benefit of any obliga-

tions or collateral securities which the principal debtor has given to the surety or person standing in the situation of a surety. Such securities are regarded as trusts for the better security of the debt, and the fact that the creditor did not originally rely upon the credit of such collateral security, or know of its existence in the first instance, is immaterial. (*Vail* v. *Foster*, 4 N. Y. 312; *Curtis* v. *Tyler*, 9 Paige, 432; *National Bank of Newburgh* v. *Bigler*, 83 N. Y. 51; *Wager* v. *Link*, 134 N. Y. 122; *Keller* v. *Ashford*, 133 U. S. 610; *New London Bank* v. *Lee*, 11 Conn. 112; *Meyers* v. *Campbell*, 59 N. J. L. 378; *First Nat. Bank* v. *Hunton*, 70 N. H. 224; *Matter of Fickett*, 72 Me. 266; *Kramer & Rahm's Appeal*, 37 Penn. St. 71.) The rule is applicable here. The right of subrogation is founded upon principles of equity and not in contract. It is to be so administered as to accomplish, through general equitable rules, what is just and fair between the parties. It does not depend upon privity, nor is it confined to cases of strict suretyship. Subrogation is an act of law and a mode which it adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. If in the performance of a contract conditions arise which require to effect such result the intervention of the right the court will so decree, provided that in so doing the law is not violated or a contract altered. (*Pease* v. *Egan*, 131 N. Y. 262; *Morehouse* v. *Brooklyn H. R. R. Co.*, 185 N. Y. 520; *Arnold* v. *Green*, 116 N. Y. 566.) The defendant became surety to the Brick Company for the payment of the debt of the Contracting Company. His guaranty was a separate, independent contract that he would pay the debt if the company did not. He placed his financial responsibility as a security for the payment of the purchase price of the bricks. The trust for the better security of the debt attached to the guaranty as it would have attached to property deposited by

the Contracting Company with the Brick Company as security.   The note for the debt was given by the authority of the contract, but this did not satisfy or discharge the debt either as to the debtor or guarantor. The contract expressly so provided.   The Brick Company, as was contemplated by the contracting parties and within the purpose for which the note was given, indorsed the note and transferred it to the plaintiff. The note was not paid and was duly protested.   The Brick Company through its indorsement became a surety to the plaintiff for the payment of the note by the contracting company (*National Exchange Bank of Lansingburgh* v. *Silliman*, 65 N. Y. 475), holding enforceable security in the shape of the defendant's guaranty, for the payment of the debt represented by the note.   There was a single debt and the payment of it was guaranteed by the defendant.   If he pays it to the plaintiff, he will pay the amount and for the purpose provided by his guaranty, his liability as guarantor will be extinguished and the plaintiff will receive only his due from the security expressly created and provided to pay the debt.   Through subrogation the plaintiff has been properly and lawfully substituted in the place of the Brick Company and permitted to avail itself of the right of that company to enforce the right of action upon the guaranty of the defendant.   The guaranty or its avails could not be diverted to the payment of the other creditors of the Brick Company and its receiver had no interest therein. There is no finding that any other party was interested in the guaranty or that the defendant was liable to any other party under it.

The judgment should be affirmed, with costs.

HAIGHT and VANN, JJ., concur; CULLEN, Ch. J., concurs in result; GRAY and WERNER, JJ., concur on ground first stated in opinion; CHASE, J., not sitting.

Judgment affirmed.