W. Irving Herskovits Fur Co., Inc., Plaintiff, *v.* Michael Hollander, Defendant.

Supreme Court, New York County, December 5, 1930.

*Slade & Slade* [*Maxwell Slade* and *David H. Slade* of counsel], for the plaintiff.

*Barron, Rice & Rockmore* [*Elias L. Rockmore* and *George P. Halperin* of counsel], for the defendant.

COTILLO, J.  Plaintiff, by its motion, seeks summary judgment under rule 113 of the Rules of Civil Practice and the defendant by his cross-motion has moved for judgment on the pleadings under rule 112 of the Rules of Civil Practice and section 476 of the Civil Practice Act.

The plaintiff sues upon a written guaranty executed by the defendant.  During the month of March, 1929, one H. L. Simmons on behalf of himself and/or H. L. Simmons & Co., Inc., and/or Kurzman, Inc., were desirous of purchasing goods on credit from the plaintiff.  The value of the goods was $44,463.75 to be paid for on November 30, 1929.  Plaintiff was unwilling to extend the period for payment nor would it give credit for the full amount unless the purchasers could secure the payment over and above the first $25,000.  The defendant was acceptable to the plaintiff as guarantor.  The defendant thereupon signed the following agreement: " In consideration of your acceptance of Mr. H. L. Simmons' order for merchandise amounting to $44,463.75 plus interest of $1,474.71 and extending to him a line of credit for said amount, as above indicated, I hereby guarantee his account over and above the first $25,000 and in the event of default in payment by him, I agree to pay the amount due on demand, as per my letter of Mar. 19, 1929.          " MICHAEL HOLLANDER  (signed)"

The letter mentioned in this guaranty is on the letterhead of A. Hollander & Son and addressed to the plaintiff.  The letter reads  as follows:

" Complying with your request of the 18th I am enclosing herewith duplicate guaranty for H. L. Simmons which I have properly signed.

" The limit of my liability is not to exceed $19,463.75.

" Very truly yours,

" MICHAEL  HOLLANDER."

On November 29, 1929, the account of the purchasers not having been paid, the defendant forwarded to plaintiff a letter wherein he agreed, in consideration of the extension of the credit of the purchasers to continue the guaranty. In this letter (Exhibit " C " attached to the complaint) defendant declared: " I hereby restate in full force and effect my liability under said guaranty which is not to exceed the sum of $19,463.75. *Said amount is due and payable to you not later than February 12, 1930.*"

On January 9, 1930, defendant again wrote to plaintiff reiterating his liability under Exhibit " A " in consideration of further extensions by plaintiff to the purchasers *of the time of payment.* (Exhibit " D " attached to the complaint.) This letter is written on his letterhead and reads as follows: " In consideration of your further extending the payment due to you by Kurzman and/or H. L. Simmons & Co., Inc., maturing on January 10, February 8, and February 12, 1930, which I have guaranteed in keeping with my letters of March 18 and November 29, 1929, I hereby restate in full force and effect my liability under said guarantee, which is not to exceed the sum of nineteen thousand four hundred sixty-three dollars and seventy-five cents ($19,463.75). The said amount is due and payable to you not later than April 15, 1930."

When the letter of January 9, 1930 was written, the purchasers had paid on account of their indebtedness the sum of $15,000. It appears from the complaint that prior to the commencement of this action all of the original indebtedness was paid except $16,918.02, for which sum the plaintiff now seeks judgment.

Defendant in his answer concedes the making of the guaranty but denies the conclusions drawn by the plaintiff. It raises several separate defenses, to wit, that his guaranty was limited to guaranteeing the amount of $19,463.75 and that this amount was paid by the purchasers and discharged him and also that the plaintiff concealed from the defendant the reduction of the purchasers' indebtedness and that the instrument of January 9, 1930, was executed by him in ignorance of this payment. The pleadings and the cross-motion reduce this motion to the consideration of a single issue which is the interpretation to be given to the guaranty. The plaintiff claims that the defendant guaranteed the account of Simmons for the difference between the amount of credit which the plaintiff was willing to extend to the purchasers, *i. e.*, $25,000, and $44,463.75, the amount of credit which the purchasers desired, while the defendant's contention is that all he did was to guarantee a part of the purchasers' debt to the amount of $19,463.75, and that as soon as plaintiff was paid that amount the defendant's guaranty was fulfilled.

" Where the guaranty consists of separate instruments, or other instruments constituting parts of the same transaction are either by annexation or reference or otherwise constituted a part of the guaranty, such instruments should be read together and each construed with reference to the other." (28 C. J. 933.)

This is but an outgrowth of the fundamental rule affecting contracts that where several instruments are made a part of one transaction they will be read together and each will be construed with reference to the other. (See 2 Williston Cont. § 628, p. 1211.) The meaning of the guaranty depends upon the intention of the parties, and the court must put itself in the position of the parties (2 Williston Cont. § 629, p. 1214), so that it may be thus enabled to reach a construction which gives effect to the apparent purpose of the contract. Therefore, I have considered in reaching a determination all the exhibits annexed to the complaint.

In entering upon an analysis of the guaranty in question we need not linger long over general principles. In this extensively litigated branch of the law, the principles governing the construction and enforcement of instruments of guaranty have become established and clarified through repeated adjudications. Our discussion will, therefore, be directed only to the specific problem presented.

In construing the legal effect of a guaranty, the important question is, if possible, to determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed in the contract of guaranty, as read in the light of the attendant circumstances and the purpose for which the guaranty was made. (*Catskill National Bank* v. *Dumary*, 206 N. Y. 550; *Bennett* v. *Draper*, 139 id. 266; *Powers* v. *Clarke*, 127 id. 417; *Schwartz* v. *Hyman*, 107 id. 562; *Schmitz* v. *Langhaar*, 88 id. 503; *Hamilton* v. *Van Rensselaer*, 43 id. 244; *Springsteen* v. *Samson*, 32 id. 703; *Rindge* v. *Judson*, 24 id. 64; *Agawam Bank* v. *Strever*, 18 id. 502; *Union Bank* v. *Coster*, 3 id. 203.)

" But in this as in other cases, the extent of the obligation must be ascertained by considering not only the language of the instrument, but also the nature of the transaction to which it relates, and such fair and reasonable interpretation be given to the contract as will carry into effect the intention of the parties, and so attain the object for which the instrument is designed." (*Schmitz* v. *Langhaar, supra*, 506.)

This problem of construction is one for the court. (*Hamilton Trust Co.* v. *Shevlin*, 156 App. Div. 307, 310; affd., 215 N. Y. 735; *Perlman* v. *Ehrlich*, 119 N. Y. Supp. 663, 664; *Manhattan Rolling Mill* v. *Dellon*, 113 id. 571.)

In determining the meaning of a guaranty drawn by merchants, as the one at bar, the rule of construction to be applied is that stated in *Lawrence* v. *McCalmont* (2 How. [U. S.] 426), and quoted with approval in *Gates* v. *McKee* (13 N. Y. 232): "We should never forget that letters of guaranty are commercial instruments, generally drawn up by merchants in brief language, sometimes inartificial and often loose in their structure and aim; and to construe the words of such instruments with a nice and technical care would not only defeat the intention of the parties, but render them too unsafe a basis to rely on for extensive credits, so often sought in the present active business of commerce throughout the world."

*Schwartz* v. *Hyman* (107 N. Y. at p. 565) clearly states the manner of determining a guaranty of the description of the instant one: "Very little, if any aid for the construction of this guaranty can be derived from the reported cases." This guaranty, like that in the case cited, must be construed in the light of its own peculiarities. The terms used and language employed are to have a reasonable interpretation, according to the intention of the parties as disclosed in the instrument, read in connection with the surrounding circumstances, the relations of the parties, and the purpose for which the guaranty was entered into. The contract of a surety must be construed fairly and reasonably, according to the intention of the parties; and where the question is as to the meaning of his obligation, there is no difference between it and the contract of any other party.

The defendant advances the rule of *strictissimi juris*, but this rule can never be enforced where the question is as to the meaning of the language of the contract. *Gamble* v. *Cuneo* (21 App. Div. 413; affd., 162 N. Y. 634) holds as follows: "It is quite true that in one sense the contract of a surety is *strictissimi juris*, and it is not to be extended beyond the express terms in which it is expressed. *This rule, however, is not a rule of construction of a contract, but a rule of application of the contract after the construction of it has been ascertained.* Where the question is as to the meaning of the language of the contract, there is no difference between the contract of the surety and that of anybody else. (*Gates* v. *McKee*, 13 N. Y. 232, 237; *Belloni* v. *Freeborn*, 63 id. 383.) In the case of a surety, as in the case of anybody else, when it becomes necessary to construe the contract, the usual rules are to be used, and it is to be interpreted like any other paper. Those rules are that, in the construction of a contract, the situation of the parties at the time the contract is made is to be taken into consideration; the language used is to be interpreted in view of that situation so as to accomplish the purpose for which the contract was made." (Italics mine.)

If the language used in a guaranty is reasonably open to conflicting meanings then the rule of construction to be applied is stated as follows in *Whitall-Tatum Co.* v. *Manix* (61 Misc. 615, 617): "a guaranty is to be construed according to what fairly appears therefrom. to have been within the contemplation of the parties at the time, and within that rule it is to be taken most strongly against the guarantor; that is to say, if the language is reasonably open to conflicting meanings, that meaning is to be adopted which is most favorable to the guaranty."

We are admonished by the cases which we have cited *supra* to ascertain the intent of the parties so as to ascribe to the instrument a fair meaning. While the task of determining intent may often be an arduous one, the inquiry is here simplified by an express disclosure, in the very instruments by which the parties contracted, of the setting in which the liability was incurred.

What was the position of the plaintiff to the purchasers? It was willing to sell them a bill of goods in the sum of $25,000 upon its own initiative and upon its own credit risk. The purchasers, however, wanted to place an order for more than $25,000, *i. e.*, for $19,463.75 in addition thereto. Plaintiff was willing to sell the purchasers this additional amount of goods, but it was not willing to assume the additional credit risk over and above $25,000. As to that amount it required of the purchasers a guaranty. The purchasers suggested the defendant as guarantor for the difference between what plaintiffs were willing to sell the purchasers at its own risk and the total amount of the sale which the purchasers desired. To the defendant was thereupon communicated the letter which forms part of Exhibit "A," and in which, as it has been observed, plaintiff said: "We are disinclined to give him such dating unless his account over and above $25,000 is satisfactorily guaranteed." This is precisely as if plaintiff had said to the defendant: "*We will extend credit to the purchasers in the sum of $44,463.75 if you, Hollander, will guarantee that the difference between the amount of credit which we are willing to extend, i. e., $25,000, and the amount of credit which the purchasers want us to extend, $44,463.75, will be paid.*" This offer the defendant accepted.

There can be no question that the guaranty in the instant matter was intended to cover only the single transaction therein referred to and not to be effective as a continuing guaranty covering other sales, etc. That this is so becomes clear from a consideration of the language as to the limitation of the amount of the debt, as well as the time of payment set forth in the guaranty.

Applying the different rules of construction here outlined, and considering the purpose which the parties had in mind to accomplish

by their acts and the disclosed circumstances surrounding the entire transaction, I am led to the conclusion that the defendant intended to and did bind himself, absolutely, to answer to plaintiff, without qualification, for any portion of the debt over and above the initial $25,000, in an amount, however, not to exceed $19,463.75.

It follows that the complaint must be held sufficient, and as a consequence of such ruling there must follow a holding that the alleged two defenses in the answer contained are legally insufficient, that the denials raise no issue and plaintiff is entitled to the summary judgment for the relief prayed for, and defendant's motion for judgment on the pleadings is denied, with costs.