### GREENOUGH v. MUNROE et al.

District Court, S. D. New York.
Jan. 5, 1931.

Hunt, Hill & Betts, of New York City (John W. Crandall and Morris Douw Ferris, both of New York City, of counsel), for petitioner.

Duer, Strong & Whitehead, of New York City (Selden Bacon, of New York City, of counsel), for intervener.

Zalkin & Cohen, of New York City (Nathan Coplan, of New York City, of counsel), for receiver.

FRANK J. COLEMAN, District Judge.

A receiver of the defendants having been appointed in this creditor's action, the Olivier Straw Goods Corporation petitions for relief founded upon the following facts, and the Chartered Bank of India, Australia & China, intervening, joins in the prayer:

The defendants were a firm of private bankers in New York and the petitioner was one of their customers engaged in importing. In order to arrange for payment of goods purchased in the Far East, the petitioner caused the defendants to issue five irrevocable letters of credit to the vendors in the Orient. The latter drew drafts upon the defendants under the letters of credit, and discounted them, accompanied by bills of lading, etc., with certain Oriental banks. The drafts and bills of lading, etc., were forwarded to New York by their holders and presented to the defendants, who accepted them, retaining the bills of lading and other accompanying documents, but returning the drafts to their holders in New York. Thereafter, in order to make the goods available to the purchaser, the defendants turned over to the petitioner the bills of lading and other accompanying documents, taking back trust receipts under which title to the goods or their proceeds was retained by the defendants until certain payments were made by the petitioner. Between the time when the defendants delivered the bills of lading to the petitioner and the date for payment by the petitioner to the defendants, the present action was brought and a receiver of the defendants appointed.

Petitioner now asks for leave to pay the receiver the amounts due to the defendants under the trust receipts, but with a provision that the moneys be held in trust for the payment of the drafts; or, in the alternative, that the petitioner be permitted to pay the drafts in the hands of their holders and to obtain the trust receipts from the receiver.

The intervener, the Chartered Bank of India, Australia & China, is the holder of some of the drafts and joins in the prayer. If the relief is granted, the holders of the drafts will receive full payment of their claims against the defendants, whereas other creditors will receive merely such dividend as may ultimately be declared upon a distribution of the estate. The petitioner contends that, if the application is denied, the petitioner may be subjected to a double liability, first, to the receiver upon the trust receipts, and, in the second place, to the Oriental vendors upon the original contracts of purchase.

It is undisputed that a present liability on the part of the petitioner to either the vendors or to the holders of the drafts would entitle the petitioner to the relief asked. The petitioner, however, is not liable to the holders because its name is not on the drafts; and an extremely doubtful question is presented as to whether it is liable to the vendors. It is further contended that, even in the absence of such liability, the relief should be granted on either of two grounds, first, that the documents made the defendants trustees of an express trust to hold the goods or their proceeds for the payment of the drafts; or, second, that the equitable principles of subrogation entitle the vendors or the holders of the drafts to have the goods, or such proceeds as are still held separate, applied in payment of the drafts.

Considering the transactions more in detail, it appears that the petitioner, on making application for the letters of credit, agreed with the defendants to pay them "a sufficient amount in cash to cover all drafts drawn under said credits. * * * All sight drafts to be paid on demand, all acceptances to be paid one day prior to maturity or in time to reach the place of payment in the regular course of the mails one day prior to maturity." Petitioner further agreed "that the title to all property pledged, purchased or shipped under each of said credits * * * and the proceeds thereof shall be and remain in you (the defendants) until all drafts under said credits and other indebtedness to you shall be paid."

The letters of credit sent to the vendors stated that an irrevocable credit was opened by the defendants "for account of Olivier Straw Goods Corporation, New York, (petitioner) * * * available by your (the vendor's) drafts on us at four months sight to be accompanied by bills of lading," etc. The letters of credit further provided that the bankers "agree that the holders of drafts drawn under and in compliance with the terms of this credit that the same shall be duly honored on due presentation and delivery of documents as specified. * * *"

When the defendants accepted the drafts and retained the accompanying bills of lading, they notified their customer, the petitioner, and received from the latter an acknowledgment reading: "We (the petitioner) agree to reimburse you on or before maturity for the following acceptances." When the defendants delivered the bills of lading to the petitioner, they received trust receipts providing that, in consideration for the delivery of the bills of lading, the petitioner "agrees to hold said credits as the property of John Munroe & Company and always capable of separation, identification and location as such until the acceptance of (the draft) given or to be given as the purchase money of said merchandise * * * shall have been paid John Munroe & Company with liberty, however, to sell the same or a portion thereof for the account of John Munroe & Company. We agree to pay over, endorse and deliver to John Munroe & Company all proceeds of sales of every account as soon as received to apply when paid against the acceptance. * * * We further agree that the said credits and proceeds thereof shall be deemed security to John Munroe & Company for any other indebtedness which may now or at any time hereafter exist. * * * The intention of this agreement is to protect, and preserve unimpaired the title of John Munroe & Company to said merchandise."

The petitioner has sold some of the goods held under the trust receipts, and still possesses the balance in specie. The goods and the proceeds which are still held by the petitioner are ample to cover all the outstanding drafts.

The sales by the vendors in the Far East to the petitioner were arranged by cable and letter, and were in most instances finally confirmed in abbreviated memoranda which briefly mention quantities, prices, payments, shipments, etc. In some instances an item read: "Payment: draft at 4 m/s under letter of credit." In other instances the corresponding item read: "Terms:—Irrevocable letter of credit to be opened by cable immediately at 120 days sight in favor of (vendor) for the full amount of this order." In still other instances the item read: "Terms of payment: Letter of credit to be established in favor of (vendor)." In still other instances there was no formal memorandum of confirmation, but a cablegram constituting part

of the contract of sale contained the direction, "Open letter of credit by telegraph."

Some of the contracts of sales were made before the issuance of the respective letter of credit and some were made after. In no case did the contract of sale mention what banker was to issue the letter of credit nor what terms it was to have except the time of the drafts. In no case, however, did the vendor part with title to the goods until he received the letter of credit and accepted it by drawing a draft against it.

█ It thus appears that each entire complicated transaction consisted of a sale by the merchant in the Orient to the petitioner wherein the defendants were used as a conduit for the transference of both the title and the purchase money. While title was given to the defendants, it was done solely to secure their reimbursement. I do not think the defendants were trustees of an express trust for the petitioner or for the vendors or for the holders of the drafts; but, on the other hand, while the goods remained in specie or their proceeds were held in a separate fund, defendants' rights in them were limited to security for reimbursement. The transaction was not, as the receiver contends, in effect a sale by the vendors to the defendants and a resale by the latter to the petitioner.

I do not think it is necessary to decide whether in an action at law the petitioner would still be liable to the vendors upon the contracts of sale, though I believe it would not be. The absence of such legal liability, however, should not prevent a court of equity from protecting the rights of the vendors and the holders of the drafts if by subrogation they have any interest in the goods or the separate fund arising from the proceeds.

█ In Catskill National Bank v. Dumary, 206 N. Y. 550, 100 N. E. 422, the New York Court of Appeals laid down principles of subrogation which I think are applicable to the present case. The defendants and the vendors are both liable on the drafts to the present holders, and the vendors, acting under an agreement with the petitioner, gave the defendants title to the goods merely for the purpose of securing their reimbursement for that liability. In view of defendants' default on their liability, I believe a court of equity should subrogate the vendors and the holders to the defendants' rights in such security as is still intact, including the goods in specie and the proceeds held in a separate fund. This rule was applied in a very similar case in Ex Parte Dever, In re Suse, 13

Q. B. Div. 766, where a vendor (W. B. Sentance), the drawer of the drafts and remitter of the goods, was held entitled to such goods as were still in specie in the hands of the insolvent acceptor. The rule would, of course, be different if the goods had been sold and the proceeds mingled with defendants' general assets. Taussig v. Carnegie Trust Co., 156 App. Div. 519, 141 N. Y. S. 347.

I accordingly grant the motion to the extent of permitting the petitioner to pay the receiver under a provision that the money be impressed with a trust for a payment of the drafts.