## GREENOUGH v. MUNROE et al.

District Court, S. D. New York.

Dec. 29, 1932.

Zalkin & Cohen, of New York City (Nathan Coplan, of New York City, of counsel), for receiver.

Buhler, King & Miller, of New York City (Joseph S. Buhler, of New York City, of counsel), for claimant Midland Bank, Limited.

FRANK J. COLEMAN, District Judge.

The situation presented is somewhat similar to that considered by this court and by the Circuit Court of Appeals in connection with the defendant's customer Olivier Straw Goods Corporation. Greenough v. Munroe (D. C.) 46 F.(2d) 537; Id. (C. C. A.) 53 F. (2d) 362. In the present case Frank B. Ross Co., Inc., applied to the defendants for a credit to be made available to the persons abroad from whom Ross Company made various purchases, and pursuant thereto the defendants requested their correspondent, the Midland Bank, Limited, of England, to accept and pay drafts drawn upon it by the foreign vendors in amounts specified. The Midland Bank accepted such drafts and pursuant to its agreement with the defendants forwarded to the latter the bills of lading and other documents of title covering the goods purchased by Ross Company. These documents were turned over by the defendants to Ross Company under trust receipts similar to those already considered in the case above mentioned of the Olivier Straw Goods Corporation.

Before the acceptances became payable by the Midland Bank, the defendants went into receivership in the present suit and thereafter the Midland Bank paid the drafts when due. Ross Company in the meantime disposed of the goods and the receiver made this application to compel it to pay over the proceeds due under the trust receipts. Ross Company has already paid into the court this amount, less certain offsets, and the Mid-

---

land Bank intervening claims it on the ground that the bank is subrogated to the rights of Ross Company or of the draft-holders.

Under the decision of the Circuit Court of Appeals in the matter of Olivier Straw Goods Corporation, supra, the customer of the defendants had the right to retain the proceeds of the goods until the drafts covering them had been paid; but in the present case the drafts having been paid by the Midland Bank, Ross Company had no right to retain the proceeds of the goods under the trust receipts given to the defendant. While these trust receipts were primarily for the benefit of the defendants to protect them from liability to their correspondent the Midland Bank, which paid the drafts, they were part of the complicated machinery for effecting the transfer of the purchase price from the New York importer to the foreign vendor, and for holding the goods as security. Viewed from the standpoint of economics apart from legalisms there can be no doubt but that the fund arising from the proceeds of the goods should be applied to the payment of the drafts or the reimbursement of their acceptor who paid them in accordance with the complicated arrangements made by all the parties beforehand. This seems to be the spirit of the recent American decisions. Greenough v. Munroe, supra; Sexton v. Fensterer, 154 App. Div. 542, 139 N. Y. S. 811, affirmed 213 N. Y. 641, 107 N. E. 1085; Barclays Bank, Ltd. v. Bank of U. S., 236 App. Div. 150, 258 N. Y. S. 317.

If, however, the Midland Bank by special arrangement with the defendants modified its rights in this regard, the spirit of these decisions might be inapplicable. On February 15, 1929, the Midland Bank entered into the contract with the defendants covering generally its rights as correspondent. This was embodied in a letter which read as follows:

"Date New York, Feb. 15, 1929
"To the Midland Bank Limited, London.

"Gentlemen: With reference to the Commercial Credits which we may from time to time issue and advise to you, we request you to accept and/or pay for our account all Bills of Exchange and/or drafts drawn upon you purporting to be in the terms of any such credits, and to debit our account with the amount of any such payments.

"We undertake to provide you with funds to meet all such Bills of Exchange and Drafts at or before maturity, and agree that you are not to be responsible to us in any way for the description or quality of the mer- chandise, or for the genuineness of the documents tendered to you under the said Commercial Credits.

"In the event of only one Bill of Lading and copy of Invoice accompanying any such Bill of Exchange or Draft, you are hereby authorized to accept and pay the same provided that nothing to the contrary is contained in the relative credit.

"These presents shall be construed according to English Law.

"Yours faithfully,
"John Munroe & Co."

At the time the specific credits in suit were opened, the defendants sent the Midland Bank regular form letters of which the following may serve as an example:

"Credit No. A 11383
"New York, June 2nd, 1930.
"Munroe & Co.
Paris
Cannes Pau
"Midland Bank, Ltd., Overseas Branch, 122 Old Broad Street, London, E. C. 2.

"Dear Sirs: We request you to advise Wadleigh Commercial Ltd. Singapore, S.S. that we have opened our irrevocable credit in their favor for account of Frank B. Ross Co., Inc. New York, N. Y. up to the amount of one thousand pounds (£1,000.) sterling available by their drafts on your goodselves at ninety days sight to be accompanied by complete set of Ocean Bills of Lading, to our order, Commercial Invoice, Consular Invoice and Policy or Certificate covering Marine and War Risk Insurance, Bill of Lading to read 'Notify Frank B. Ross Co. Inc. New York,' evidencing shipment by steamer of; merchandise from Singapore S.S. to New York C.I.F. New York.

"Marine & War Risk Insurance to be effected by shippers.

"The shippers must forward to us by first mail one negotiable copy of Bill of Lading and Consular Invoice, all remaining documents to accompany the drafts.

"We engage with the drawers, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of the advice that the same shall be duly honored on due presentation and delivery of documents as specified at your offices if negotiated on or before October 1st 1930, this credit is to be confirmed by you.

"Yours very truly,
"Per pro John Munroe & Co.
"L. A. Gibbons
"£1,000."

In accordance with these letters the Midland Bank wrote to the foreign vendors letters of which the following may serve as an example:

"Messrs. Wadleigh Commercial Ltd.,
"11th June 1930
"Singapore, S.S.

"Confirmed Credit No. 9./R/3786/11583
Which please quote

"Dear Sirs, We beg to inform you that we have received advice from Messrs. John Munroe and Company, New York that they have opened with us as a Confirmed Credit in favor of your goodselves on account of Frank B. Ross Co., Inc. New York, N. Y. to the extent of £1,000.0.0d. (say One thousand pounds) valid for negotiations in Singapore until 1st October, 1930 and available by your drafts on us at 90 days' sight accompanied by:

Invoice (Commercial)
Consular invoice
Ocean shipped Bills of Lading in complete set to order of Messrs. John Munroe & Co., New York, to read 'Notify Frank B. Ross Inc., New York.'
Insurance Policy or
Certificate covering
Marine and War risks
—evidencing shipment by S.S.; from Singapore S.S. to New York of the undermentioned goods:

"Merchandise c. i. f. from New York.

"The shippers must forward to Messrs. John Munroe and Co., New York, by first mail one negotiable copy of Bill of Lading and Consular Invoice, and attach their certificate to the effect that this has been done to the draft and remaining documents.

"All drafts drawn under this Credit must contain the clause: "Drawn under L/C No./9/R.3786 '11383' and we undertake to honour such drafts on presentation provided they are drawn and presented in conformity with the terms of this Credit.

"Office Copy Only."

The Midland Bank also wrote to the defendants letters confirming the transaction in form as follows:

"John Munroe & Co.
"June 23, 1930
"100 Broadway, N. Y.
"Registered

"Messrs. John Munroe and Company, New York.

"Dear Sirs, Your Credit No. A. 11383 Our No. 9/R/3786 We are in receipt of your letter of the 2nd inst., and in accordance therewith we have had pleasure in opening a Confirmed Credit in favour of Wadleigh Commercial Ltd., Singapore * * * for £1,-000.00d * * * and we have advised the beneficiaries accordingly.

"Please note that this Credit, being confirmed to the beneficiaries, cannot be cancelled or modified in any respect without their consent.

"We have debited your account with £——; 12:6, value today our Confirmation Commission.

"Yours faithfully,
"Asst. Manager."

It was the practice for the Midland Bank to charge the account of the defendants with the amounts of the payments on the drafts only after payment had been made, but to charge it with the correspondent's commission immediately upon confirming the credit. The defendants maintained an account with the Midland Bank against which these charges were made and on some occasions the balance to the credit of the defendants was insufficient to cover the draft payments so that the charges resulted in an overdraft in said account. The account was a regular checking one and was not maintained for the exclusive purpose of reimbursement to the Midland Bank for payments on its acceptance. These details in the transactions and relations between defendants and the Midland Bank do not seem to me to be inconsistent with the general rule which would be applicable. All parties including the defendants, their correspondent, their New York customer, and the latter's foreign vendor adopted a method of transmitting the purchase price and of holding the goods as security; and the New York customer would have had the right to retain the proceeds of the goods as against the defendants until the drafts were paid. It would seem to me just that the Midland Bank which had paid the drafts in accordance with the common plan should have the same right unless it had clearly waived it by agreeing either impliedly or expressly to rely solely upon the general credit of the defendants; and I am unable to see any such agreement in the facts above stated.

■ The defendants and the Midland Bank agreed that their rights should be determined in accordance with the English law which is presumed to be the same as our own except in so far as the contrary has been affirmatively proved. The receiver relies upon the decision of the court of the Exchequer Chamber reported in 6 Hurlstone & Normans Reports, 604, in the case of Barkworth v. Ellerman.

There an insolvent bank was held entitled to recover from its customer in a situation somewhat similar to the present one and it was further indicated by the court that the bank's correspondent would have no direct claim against the customer. Both those rulings are in accordance with what I deem to be the law, and are not inconsistent, I think, with a ruling that in equity the correspondent who had paid the drafts would be subrogated to the right to have the proceeds of the goods which were sold under a trust receipt held for his reimbursement.

The Midland Bank also claims to be entitled to moneys which Frank B. Ross Company, Inc., had paid to the defendants under certain of the trust receipts prior to the appointment of the receiver. The drafts covered by these trust receipts were not paid by the Midland Bank until after the appointment of the receiver, but the moneys received by the defendants had been mingled with their general funds in such a way as to make it impossible to identify them. Under these circumstances the equitable rule is inapplicable and the Midland Bank must be relegated to a general claim against the defendants.

Frank B. Ross Company, Inc., claims a refund from the amount it paid into court, upon the ground that less than this sum would be sufficient to purchase sterling at the present rate of exchange in the amount of the drafts paid by the Midland Bank. The drafts were for sterling which at the time of payment had the normal rate of exchange. Ross Company was not directly liable to the Midland Bank but was under contract with the defendants to pay them in New York "a sufficient amount in cash to cover all drafts drawn under said credits together with commissions and interests and expenses where chargeable. We understand that payment may be made as follows: All drafts payable in U. S. currency to be paid in New York Clearing House funds or U. S. gold dollars. Drafts in other than U. S. currency to be paid as above in amounts sufficient after conversion at current exchange rate to cover said drafts or in approved bankers demand bills of exchange endorsed by us in the currency of the drafts. All said drafts to be paid on demand, all acceptances to be paid one day prior to the maturity or in time to reach the place of payment in the regular course of the mails one day prior to maturity."

Since the contract was between residents of this country and was to be performed here, the depression of sterling after the date set for performance can have no effect upon the amount due from the customer and the latter is entitled to no refund on the amount deposited in court under the trust receipts. This ruling, of course, does not affect the amount to which the Midland Bank is entitled.

Settle order accordingly.