Jose Bamos-Lopez, J.
This is an action by the plaintiff to recover $1,032.58 from the defendant on an alleged guarantee allegedly executed by the defendant.
. On February 11, 1971, Amalia Ondrovic was brought to the plaintiff hospital by her nephew, the defendant herein; she was suffering from acute phlebitis and arteriosclerotic heart disease. She was placed in a wheelchair by hospital employees, and because of the language barrier, she gave history information to a hospital representative through her nephew as an interpreter.
Amalia Ondrovic would not be admitted to the hospital until a number of forms had been completed and signed. The defendant nephew signed these forms.
On June 1,1971, the patient was discharged from the plaintiff hospital, but prior to her discharge, the defendant inquired of Mr. Stucehia, collection supervisor of the plaintiff hospital, the total amount of the bill due and owing to the hospital for the patient’s confinement. The total amount of the bill was $1,146.31, which the defendant as the patient’s representative drew from the patient’s bank account and made payment by cashier’s check to the plaintiff hospital. Medicare, under the patient’s coverage, paid to the plaintiff hospital the amount of $7,653.25, and rejected a portion of the claim filed by the hospital on behalf of Amalia Ondrovic. The portion of the claim rejected by Medicare is the basis of this action by the plaintiff hospital against the defendant nephew.
At the trial, the plaintiff introduced into evidence the history and admission sheet which had, printed on the back of the sheet, three forms. The three forms prepared by the plaintiff hospital and printed on the back of the sheet were designated: ‘ Belease from Besponsibility for Patient’s Valuables Authorization to Belease Information and “ Besponsibility for Payment ”, *114 All these forms were signed simultaneously by the defendant at the admission of the patient to the plaintiff hospital.
The plaintiff relies on the ‘ ‘ Responsibility for Payment ” form as a guarantee of payment, which plaintiff contends renders the defendant liable for the amount of the unpaid bill.
A guarantee is a secondary or collateral liability, not a primary obligation. (General Phoenix Corp. v. Cabot, 300 N. Y. 87.)
A guarantee is dependent upon the existence of a separate and independent contract or agreement, and a guarantor’s obligation matures when there is a default on the separate and independent contract or agreement.
The plaintiff herein does not allege the existence of a contract independent of the alleged guarantee, nor is there an allegation by the plaintiff that there is a default by the principal debtor of an independent contract.
The language and form of the instrument in this action upon which plaintiff proceeds does not designate or distinguish the parties nor does it contain reference even by inference to a separate and independent indebtedness which will be unconditionally undertaken in the.event of a default by a principal debtor.
The plaintiff in its complaint alleges a cause of action based upon services rendered directly to the defendant for which the defendant agreed to pay the reasonable sum of $1,032.58.
It is apparent that the plaintiff’s complaint alleges a cause of action based on a primary obligation of the defendant and not on a Cause of action based on a guarantee.
Blood relationship no longer creates statutory financial liability for hospital care and treatment.
The legal status of guarantor or primary obligor must be established by a voluntary act based upon all the requisites necessary to create a contractual obligation.
The entire document in evidence must be read and examined as a whole to determine the intention of the parties in order to decide whether there is any obligation or responsibility on the part of the defendant.
“ The fact that the defendant was a guarantor does not change the rule of interpretation that the intention of the parties is to be ascertained and enforced” (Catskill Nat. Bank v. Dumary, 206 N. Y. 550, 555).
In the case at bar, the defendant in addition to a general denial sets forth as his affirmative defenses that he is not responsible for the debt and a further affirmative defense of wrong party defendant. These affirmative defenses raised by the defendant *115 are strong and demanding reasons for a close examination of the entire document in order to determine intention.
A review of the “ Release ” form at the top of the back side of the admission sheet leaves no doubt in what capacity the defendant signed; the line upon which the defendant signed bears the description prepared by the plaintiff “ Signature (acting on behalf of patient) ”.
This certainly indicates that the defendant was not in any manner or form representing himself personally.
The ‘ Authorization ’ ’ form was personal to the patient and could be signed only by her or one authorized by her to act on her behalf. The form authorizes the release of medical information to “ any duly authorized attorney representing me in the event that a liability action is instituted on my behalf ”. Again there can be no doubt that the defendant was acting on behalf of the patient and not personally.
The defendant testified that the “ Responsibility ” form was not explained to him, and despite the fact that Mr. Stucchia, a representative of the hospital, who had testified for the plaintiff, was in court and present when the statement was made, the statement stood uncontroverted and uncontradicted.
Mr. Stucchia in his testimony on a number of occasions testified that the defendant was acting on behalf of the patient and further testified that the defendant knew he was acting on behalf of the patient.
The three forms were signed simultaneously by the defendant, and it is conceded that the defendant signed the “Release” and “Authorization” forms not personally but on behalf of the patient, Amalia Ondrovie.
There is not one scintilla of evidence nor one word of testimony to indicate that the defendant was advised or knew that he was signing the “Responsibility ” form in any capacity other than the capacity in which he signed the previous forms, that is, ‘ ‘ On behalf of the patient ’ ’ and not personally.
From the testimony, it is apparent that the hospital representative was present when the defendant signed all the forms. Mr. Stucchia testified that the patient’s condition was serious and that the defendant was utilized as an interpreter for the patient.
A further reading of the “ Responsibility ” form states in the body “I guaranty”; the mere usage of the words “I guaranty ’ ’ does not in and of itself create a guarantee. The said forms also contain the following statement: “ It is understood that insurance benefits are acceptable in lieu of cash payments only when benefits are assigned to the hospital.” The face of *116 . the admission sheet has a column designated ‘ ‘ Method of Payment ”, which has eight categories; three of the categories are Medicare, self pay, and a blank box; the only category checked is ‘ ‘ Medicare. ”; no other category is designated. The face sheet lists the Medicare number of the patient, and it further indicates consent was signed.
It is fair to infer that the patient, Amalia Ondrovic, assigned her rights under Medicare coverage to the hospital, since the claim was filed with Medicare by the hospital.
It is, further, fair to infer, since the plaintiff hospital took the assignment from the patient pursuant to that provision in the “ Responsibility ” form, that it considered the patient solely responsible under the provisions of the said instrument and the basis of that responsibility is that she authorized her nephew to sign on her behalf and to therefore bind her for any indebtedness.
Mr. Stucchia and-the plaintiff hospital through Mr. Stucchia knew the patient’s serious condition, were aware of the language barrier, knew from the signatures affixed on the ‘ ‘ Release ’ ’ and * Authorization ’ ’ forms that the defendant was signing on behalf of the patient and did not intend to bind himself personally, and despite all this, the plaintiff through its agents or representatives did nothing to inform or advise the defendant that he was acting in any capacity other than on behalf of the patient and not personally.
‘ Where there is uncertainty or doubt as to the meaning of words or phrases used * * * -in seeking for the intent of the parties as evidenced by the words used, the fact that a con-, struction contended for would make the contract unreasonable and place one of the parties at the mercy of the other, may properly be taken into consideration ” (Gillet v. Bank of Amer., 160 N. Y. 549, 557).
The plaintiff has failed to prove the existence of a guarantee by the defendant to the plaintiff and the plaintiff has further failed to prove any liability on the part of the defendant for the .amount allegedly due and owing to the plaintiff hospital.
The complaint must therefore be and is dismissed.